Roger L. COMEAU; David L. Comeau; Charles G. Comeau; Rooks County Savings Association; and Federal Savings and Loan Insurance Corporation (as successor in interest to Rooks County Savings Association); and Rupp Financial Corporation, Plaintiffs,

v.

Terry RUPP; C.F. Rupp; Farmers National Bank; Alexander Grant & Co., Defendants,

Grant Thornton, (formerly Alexander Grant & Co., a partnership); and Fox & Company, a partnership, Defendant–Counterclaimants and Cross–Claimants.

GRANT THORNTON and Fox & Company, Third Party Plaintiffs,

v.

Mimi KRUSE; Jack Curtis; George Ostmeyer; Bryan Ronck; and A.J. Schwartz, Third Party Defendants.

Civ. A. No. 86–1531–T.

United States District Court, D. Kansas.

April 15, 1991.

A.J. Schwartz, Ken M. Peterson, Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., Theresa L.F. Levings, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiffs.

Robert F. Lytle, Patrick D. Gaston, Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, Kan., Ron C. Campbell, John T. Conlee, Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., Theodore A. Livingston, Jr., Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motions of various parties to dismiss the claims of the third-party plaintiffs; to strike plaintiffs' claim for punitive damages; and to review an order of the magistrate. The action involves the legal fallout from the failure of the Rooks County Savings and Loan Association ("RCSA" or "the Association") in Plainville, Kansas. The court outlines the events leading to this litigation.

### I. *Background*

The RCSA was purchased in 1983 by certain members of the Rupp and the Comeau families, the respective families owning 70% and 30% of RCSA stock.[1] By a stock sale agreement signed on August 27, 1985, and closed on February 10, 1986, the Comeaus bought the entire stock of the Rupps and thus came to acquire 100% of RCSA. The RCSA began experiencing increasing difficulties with its loan portfolio in early 1986. In June 1986, the Comeaus as individuals and the RSCA filed suit against the Rupps, alleging violations of the federal and state securities laws and state common law. The essence of these allegations is that the Rupps knew and withheld material facts from the Comeaus concerning the stock sale, and that the Comeaus are entitled to actual damages as well as rescission of the stock sale agreement. The Comeaus also filed suit against Farmers National Bank, which is owned and actively controlled by the Rupps. The basis of the suit against Farmers National is the allegation that it received the benefits of the alleged breach of the fiduciary duty owed by the Rupps to RCSA. The claims against the Rupps are not among the matters presently before the court.[2]

The Comeaus and RCSA subsequently amended their complaint to allege malpractice claims against defendants Grant Thornton and Fox & Company ("the Accountants" or "Auditors"). These defendants are partnerships in the practice of certified public accounting. Defendant Fox conducted the audit of RCSA's 1984 financial statements. In the spring of 1985, Grant Thornton and Fox and Company became affiliated with each other. Grant Thornton audited RCSA's financial statements for the years 1985 and 1986.

Under the Fourth Amended Complaint, the Accountants are alleged to have performed the 1984 and 1985 audits of RCSA recklessly and negligently. It is alleged that the Accountants certified the financial statements for the years 1984 and 1985 as conforming to generally accepted accounting principles, notwithstanding the Accountants' actual or constructive knowledge that RCSA's internal accounting con-

---

1. More accurately, 99.5% of RCSA is owned by Rupp Financial Corporation, a bank holding company. It is the events and circumstances relating to the sale of Rupp Financial stock that gave rise to this lawsuit.

2. The Comeaus have previously moved for summary judgment on these claims, which motion was denied by Judge Crow before the case was transferred.

trols were unreliable, and that certain loans represented unacceptable high risks. In reliance upon the Accountants' allegedly false certifications, the Comeaus and the RCSA allege that they have suffered substantial losses. More specifically, the Comeaus seek recovery from the Accountants for the purchase and redemption price of the stock, and for the amount corresponding to the diminution in the value of the Comeaus' minority ownership interest. The RCSA claims damages for losses on certain specific loans originating from the Halle Mortgage Company ("Halle loans")— which was the primary loan servicer for RCSA. Both plaintiffs also seek punitive damages from the Accountants. The claims of the plaintiffs against the Auditors are based on the federal securities laws, as well as state common law for breach of fiduciary duty, reckless and wanton conduct, and negligence.

Shortly after the Fourth Amended Complaint was filed, RCSA was declared insolvent, and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed as receiver. Thus, FSLIC was substituted as plaintiff for the claims alleged by RCSA. Thereafter, on December 22, 1989, the Federal Deposit Insurance Corporation ("FDIC") was substituted for the FSLIC as the successor in interest to RCSA. The court will therefore refer to the FDIC and the FSLIC interchangeably throughout this order.

The Accountants filed an answer disputing all liability; raising affirmative defenses; alleging counterclaims against the Comeaus, RCSA and the FDIC as its successor; and alleging cross-claims against the Rupps. By order filed February 5, 1990, the magistrate allowed the Accountants to amend their answer to allege contributory negligence as an affirmative defense. The counterclaims and cross-claims of the Accountants, as amended, essentially allege that RCSA, the Comeaus, and the Rupps

failed to disclose all documents and material information relating the financial condition of RCSA.[3] Based on this failure, and under various and sundry legal theories, the Accountants seek indemnity[4] from these parties for any amount that they may be held liable to the Comeaus and the RCSA. The Accountants have also filed a third-party complaint seeking indemnity from several third-party defendants, including A.J. Schwartz—an attorney for the Comeaus during the negotiations for the stock sale.

The FDIC, the Comeaus, and A.J. Schwartz move for dismissal of all claims for indemnity made against them by the defendant-Accountants.

## II. *Applicable Principles of Liability*

■ Before addressing the arguments, it is important to note that all parties recognize the inapplicability of the Kansas comparative negligence statute, K.S.A. § 60–258a, to this case. In *FSLIC v. Huff,* 237 Kan. 873, 704 P.2d 372 (1985), the court held that an action seeking damages for economic loss is not within the purview of the Kansas comparative negligence statute, and that persons responsible for such losses are therefore jointly and severally liable. *Id.* at 879, 704 P.2d at 377. Although the Kansas legislature subsequently acted to repeal this particular holding of *Huff, see* 1987 Kan.Sess.Laws ch. 221, § 1, the Kansas Supreme Court has held that this amendment is not to be applied retroactively to claims that accrued before July 1, 1987. *Wichita Fed. Savings & Loan Ass'n v. Black,* 245 Kan. 523, 542, 781 P.2d 707 (1989). Thus, liability in this case is joint and several, and the allocation of fault is governed by the law of contributory negligence, indemnity, and contribution as it existed in Kansas prior to the adoption of K.S.A. § 60–258a.

"Indemnity" refers to a 100% shift in liability from the indemnitee to the indem-

---

**3.** Count V of the counterclaim also seeks recovery from RCSA for amounts due to Grant Thornton for its auditing services in 1985.

**4.** By amended answer, and in response to the FDIC's present motion to dismiss, the Account-

ants have delated any reference to "indemnity" in their counterclaims and instead characterize their claims as "independent claims for relief." *See infra* at 1439–1440.

nitor, whereas "contribution" implies a shift of only part of the loss to another. *See generally Kennedy v. City of Sawyer*, 228 Kan. 439, 454, 618 P.2d 788 (1980); *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 185, 643 P.2d 158 (1982); *Symons v. Mueller Co.*, 526 F.2d 13, 16–17 (10th Cir. 1975). In either case, the rights of the person seeking to shift responsibility to another are limited under Kansas law.

■ Indemnity may exist either through express agreement or may be implied. *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 642, 666 P.2d 192, 199 (1983). In this case, there is no express agreement, and therefore any claim for indemnity by the Auditors must rely on a theory of implied indemnity. Implied indemnity may arise in two situations: 1) where one personally without fault is made to pay for the tortious acts of another, such as in the case of the liability of a principal for the acts of the agent, or 2) where the negligence of the indemnitee can be characterized as "passive" or "secondary," as contrasted to the "active" or "primary" negligence of the indemnitor. *E.g.*, *Kennedy*, 228 Kan. at 455, 618 P.2d 788.

■ The right to contribution is equally restrictive in Kansas, which "adheres to the common law rule that there is no right to contribution between joint tortfeasors." *Alseike v. Miller*, 196 Kan. 547, 550, 412 P.2d 1007 (1966). The only exception to

this rigid rule is the statutory right to contribution between the joint *judgment debtors* of the plaintiff. *McKinney v. Miller*, 204 Kan. 436, 464 P.2d 276 (1970). That is, a right of contribution between joint tortfeasors exists only if these actors were sued by a plaintiff who has obtained a judgment against each. Unless a plaintiff has chosen to sue all potential defendants, the defendant against whom a plaintiff does obtain a judgment will never have any right to contribution against other joint tortfeasors who did not become a judgment debtor to the plaintiff. *See generally Brown v. Keill*, 224 Kan. 195, 197–98, 580 P.2d 867 (1980).

■ Applying these rules, it is clear that the Accountants can state no claim to contribution against any party not sued by plaintiffs. None of the Accountants' co-defendants have motions pending before the court, and the court therefore considers the viability of the Accountants' affirmative defense of contributory negligence and of their claims for indemnity.

### III. *FDIC's Motion to Dismiss Claims for Indemnity* [5]

■ The FDIC moves for dismissal of all claims for indemnity made against it, arguing under Kansas law that accountants who have negligently or recklessly performed auditing services for failed institutions are precluded from seeking indemnity

---

5. Although the issue is not raised by the parties, it appears settled that insofar as the need for a uniform federal rule is implicated, *see United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979), "[f]ederal law controls the rights and obligations of the FDIC." *Jones v. FDIC*, 748 F.2d 1400, 1402 (10th Cir.1984). *See also FDIC v. Bank of Boulder*, 911 F.2d 1466, 1474–77 (10th Cir.1990) (en banc); *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754, 760 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *Firstsouth F.A. v. Aqua Constr., Inc.*, 858 F.2d 441, 442 (8th Cir.1988) (federal law controls rights of FSLIC). Accordingly, through its purchase and assumption agreement, the FDIC or FSLIC acting in its corporate capacity may limit liability on claims made against it for the previous actions of the closed association. *See In re F & T Contractors, Inc.*, 718 F.2d 171, 180 (6th Cir. 1983). The liability that may be excluded under

such an agreement may be a liability incurred under a contract made by the closed association, *see Trigo v. FDIC*, 847 F.2d 1499 (11th Cir.1988), or may be a liability arising out of the tortious conduct of the association's former officers and directors. *See FSLIC v. Locke*, 718 F.Supp. 573, 581 (W.D.Tex.1989).

On the other hand, it has also been held that persons against whom the FDIC–Corporation makes claims may assert certain defenses. *See FDIC v. Hughes Dev. Co.*, 684 F.Supp. 616, 624–26 (D.Minn.1988) (defendant could raise affirmative defense of rescission of contract against FDIC in corporate capacity); *FDIC v. Panelfab Puerto Rico, Inc.*, 739 F.2d 26 (1st Cir.1984) (cancellation of guarantees). Because it does not clearly appear to the court that Kansas law conflicts with federal common law on the issues raised, the court addresses the issues as framed by the parties. *See Downriver*, 879 F.2d at 761 (in fashioning federal common law, court may look for guidance to state law).

from others. As an initial matter, the Accountants strenuously argue that their counterclaims against the FDIC are not for indemnity, but rather are "independent causes of action" against the Association based on contract, common law fraud, and negligent misrepresentation. The Accountants further argue that they have incurred "damages" in defending against the claims made against them. With this argument, the Accountants apparently hope to avoid the harshness of the common law rules for indemnity recognized in Kansas.

The court is thoroughly unpersuaded by the Accountants' attempt to cast their claims for indemnity as "independent claims for relief." Regardless of the theory or appellation under which the Accountants seek recoupment of their alleged "damages," the fact remains that Counts I through IV of their counterclaims, as well as Count VIII of the second amended counterclaim, are entirely dependent upon any liability that may attach to the Accountants for the claims made against them. In other words, the only cause of action the Accountants have under Counts I through IV is one that derives from their potential liability to the plaintiffs. Moreover, the "independent damages" that the Accountants have sustained in defending against the claims against them are recoverable only in the event that they prevail on their indemnity claims. *See Prickett v. Hawkeye–Security Ins. Co.*, 282 F.2d 294, 300 (10th Cir.1960). Thus, these expenses are part and parcel of their claims for indemnity.

A further observation is necessary before addressing the merits of the FDIC's argument. It appears to the court that the possibility of an obligation to indemnify on the part of the FDIC may arise only if: (1) the Accountants' negligence may be properly characterized as passive; (2) the Comeaus were not contributorily negligent; (3) agents of the RCSA other than the Comeaus are guilty of active negligence. The court arrives at this conclusion based on the following analysis.

There are only two sets of plaintiffs in this case: (1) the Comeaus, who seek damages from the Accountants for the purchase and redemption price of the stock, and for the amount corresponding to the diminution in the value of the Comeaus' minority ownership interest; and (2) the FDIC, which seeks recovery for losses on certain specific loans in the RCSA portfolio. As noted, defendants have raised the affirmative defense of contributory negligence. Under the common law principles applicable to this action, any contributory negligence on the part of a given plaintiff toward his injuries serves as an absolute bar to any claim against a negligent defendant.[6] *See, e.g., Horton v. Montgomery Ward*, 199 Kan. 245, 248, 428 P.2d 774 (1967). Thus, it is a non sequitur to speak of "indemnity" against a contributorily negligent plaintiff on that plaintiff's claims, because the contributory negligence of a plaintiff provides a complete defense long before any need may arise to resort to the "active/passive" dichotomy of implied indemnity law.

On the other hand, if a defendant is guilty of gross negligence or reckless conduct, the contributory negligence of the plaintiff is no defense, and the defendant is

---

**6.** Because it is among the functions of auditors to detect fraud or other irregularities, courts appear to have adopted a modified form of the defense of contributory negligence in malpractice actions against accountants. Under this modified view, "the contributory negligence of the client is a defense only where it has contributed to the accountant's failure to perform the contract and to report the truth." *Lincoln Grain, Inc. v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300, 307 (1984). *See also Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 190 (Tex.Ct.App.1987); *Jewelcor Jewelers & Distribs. v. Corr*, 373 Pa.Super. 536, 551–52, 542 A.2d 72, 79–80 (1988), *appeal de-* nied, 524 Pa. 608, 569 A.2d 1367 (1989). The court is aware of no Kansas cases addressing malpractice actions against accountants, and the parties have not addressed how the relative positions of the parties in this action might alter traditional principles of tort liability. *See generally Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 454–56 (7th Cir.) (discussing relevant factors to the application of respondeat superior in auditor malpractice actions), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). The court restricts its discussion in this order to the cases and policy considerations relied upon by plaintiffs and expresses no view at this time as to the merits of this modified approach.

liable for the entire amount of the loss. *See, e.g., Friesen v. Chicago, Rock Island & Pac. R.R.*, 215 Kan. 316, 321, 524 P.2d 1141 (1974). Further, if a defendant committed his tortious acts recklessy or wantonly, this defendant can scarcely characterize his conduct as "passive" or "secondary" for purposes of seeking indemnity. Thus, if plaintiffs are able to prove reckless or wanton conduct by the Accountants, neither the defense of contributory negligence nor any claim to indemnity would be available to the defendants. *See Maryland Casualty Co. v. Bank of Charlotte*, 340 F.2d 550, 556 (4th Cir.1965) (defendant bank could not assert plaintiff corporation's contributory negligence as a defense where bank was guilty of "bad faith").

If the Accountants were merely negligent, however, two possibilities relating to the contributory negligence of the two plaintiffs are presented, only one of which implicates the defendants' right to seek indemnity from the FDIC. First, if the jury finds that the Comeaus were contributorily negligent, the Comeaus would be barred from recovery. Moreover, because a corporation can only act through its officers and directors, and because the alleged wrongful acts of the Comeaus occurred within the course and scope of their duties as officers and directors, the Comeaus' contributory negligence is imputed to the RCSA and its successor, the FDIC. *See Kline v. Multi–Media Cablevision, Inc.*, 233 Kan. 988, 666 P.2d 711, syl. ¶ 4 (1983). Therefore, under traditional tort principles, negligence on the part of the *Comeaus* will bar recovery of *both* sets of plaintiffs from any negligent defendant. In such a circumstance, the contributory negligence of the Comeaus would provide the negligent Accountants with a complete defense against both plaintiffs, and it would be unnecessary for the Accountants to prove "active" or "primary" negligence on the part of the RCSA. The second possibility is that the Comeaus might be free of negli-

gence, in which case any negligent defendant would be liable to the Comeaus. In this event, the right to indemnity from the FDIC would arise, because agents of the RCSA *other than* the Comeaus—such as the Rupps—might be shown to have been actively negligent in bringing about the Comeaus' injuries.

With these somewhat convoluted considerations in mind, the court turns to the merits of the arguments.

**A. Liability of the RCSA for the Acts of Its Agents**

■ The FDIC disputes the Accountants' right to indemnity from it under any circumstance, and presumably also disputes their right to assert the affirmative defense of the RCSA's contributory negligence.

First, FDIC argues that savings and loan institutions and their successors in interest are never liable, and thus can never be required to indemnify anyone, for the wrongful acts of their corporate officers and directors. In support of this proposition, the FDIC relies on *FSLIC v. Huff*, 237 Kan. 873, 704 P.2d 372 (1985), where the FSLIC sued former directors and officers of a savings and loan for losses resulting from their malfeasance. The individual officers and directors sought to reduce their fault under the Kansas comparative negligence statute by comparing their fault with that of persons not parties to the lawsuit. For several reasons, however, the court held that the officers and directors were jointly and severally liable and refused to allow these defendants to reduce their fault under the comparative negligence statute. Among the grounds relied upon was the observation that a corporation can only act through its officers and directors, and that it was "legally impossible" in "such litigation" for a failed institution to be contributorily negligent based upon the malfeasance of its former officers.[7] 237 Kan. at 878, 704 P.2d at 377. Seizing upon this

---

**7.** The Kansas Supreme Court subsequently referred to this rationale as "suspect," insofar as the defendants in *Huff* did not allege that the corporation, but rather certain third parties were contributorily negligent. *Wichita Fed.*

*Savings & Loan Ass'n v. Black*, 245 Kan. 523, 542, 781 P.2d 707 (1989). Thus, the supreme court itself has recognized that its earlier *dicta* in *Huff* was not responsive to the argument raised by defendants in that case.

statement in *Huff,* the FDIC submits that third parties such as auditors may only look for indemnity "to the individuals who acted on behalf of the association, not to the association itself." Doc. 381, at 11.

The statement made in *Huff* cannot be applied in the sweeping manner sought by the FDIC. The FDIC would have the court believe that *Huff,* with the fell swoop of a single sentence made *in dicta,* abrogated the maxim that corporations are liable for the wrongful acts of their agents acting within the scope and course of their employment. *See, e.g., Executive Financial Servs., Inc. v. Loyd,* 238 Kan. 663, 715 P.2d 376, ¶ 2 (1986); *Kline v. Multi–Media Cablevision, Inc.,* 233 Kan. 988, 989, 666 P.2d 711, 713 (1983); *Russell v. American Rock Crusher Co.,* 181 Kan. 891, 894, 317 P.2d 847 (1957). To state the essence of FDIC's proposition is sufficient to refute it. *Huff* merely recognized that when a corporation sues its former officers and directors for their wrongful conduct, it would be absurd to allow these same tortfeasors to interpose as a defense the corporation's malfeasance, which occurred at the hands of the very officers and directors who are being sued. Such circularity is not implicated in this case, where the accountants seek to hold the Association liable for the acts of persons *other than* themselves. Thus, for purposes of determining any duty on the part of the FDIC to indemnify the Accountants, or any contributory negligence barring the FDIC's right to recover, *Huff* does nothing to alter the common law rule imputing the wrongful conduct of a corporation's officers and directors to the corporation.

Nonetheless, the FDIC submits that the public policy considerations recognized in *Huff* prevent the Accountants from asserting any claim to indemnity against the Association. In *Huff* the court held that Kansas public policy and statutory law relating to officers and directors of savings and loans give rise to a heightened standard of conduct for these fiduciaries—even among the general class of corporate officers. 237 Kan. at 880, 704 P.2d at 378. *See also Black,* 245 Kan. at 530, 781 P.2d 707 ("Kansas has traditionally imposed a stricter duty on officers and directors than have other jurisdictions."). The FDIC attempts to draw an analogy between the fiduciary duties of directors and officers of savings and loan institutions and the special duties of independent accountants who are hired to audit these institutions. *See United States v. Arthur Young & Co.,* 465 U.S. 805, 817–18, 104 S.Ct. 1495, 1502–03, 79 L.Ed.2d 826 (1984). On the basis of this special duty, the FDIC urges the court to refuse to recognize any right to indemnity on the part of the accountants in this case.

Far from being consistent with *Huff,* the argument advanced by the FDIC sets the holding of that case on its head. The fiduciary duty of the officers and directors of savings and loan institutions is not somehow suspended when the institution sues another of its agents, nor is this duty transferable to any agent of the institution whom the FDIC chooses to sue. Implicit in the FDIC's argument is that only the institution has a right to rely on its officers and directors to exercise the high duty of care imposed upon them by statute. Such reasoning, however, is flatly contrary to the underlying rationale of *Huff:* officers and directors are held to particularly high standard of conduct precisely because they owe a fiduciary duty not merely to a corporation, but to the public.

Moreover, it is no answer that former officers and directors of the RCSA are ultimately liable for their tortious conduct, for the question at this stage of the proceedings concerns who is initially liable. As the FSLIC recognizes, the relationship between a corporation and its agents is such that the corporation is *"originally* liable solely because of that party's special relationship to the actual wrongdoer." Doc. 343 at 8 (emphasis added) (FSLIC's Motion to Dismiss, citing *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); *Prickett v. Hawkeye–Security Ins. Co.,* 282 F.2d 294 (10th Cir.1960); *Fenly v. Revell,* 170 Kan. 705, 228 P.2d 905 (1951)). *See Kennedy v. City of Sawyer,* 228 Kan. 439, 455, 618 P.2d 788 (1980). In summary, not only does the argument of the FDIC find no support in *Huff,* the holding of that

case dictates precisely the opposite conclusion than that reached by the FDIC.

It is not for this court to speculate whether the Kansas Supreme Court foresaw that the standard of conduct it imposed upon the officers of savings and loan institutions would be the same standard to which the institution vicariously would be held when third parties raised claims or defenses against it. If this result did not follow from a doctrine as firmly ensconced in the common law as that of respondeat superior, the logical extension of the rule of *Huff* might yield to the weighty policy considerations underlying the mission of the FDIC. However, the decision in *Huff* provides no support for the result sought by the FDIC, nor is it necessary to afford such a special rule to the FDIC in order to enable it to accomplish its purpose. If the former officers and directors of the Association have breached their fiduciary duties to the Association, nothing precludes the FDIC itself from filing suit against these persons. The court therefore finds that the Kansas Supreme Court's decision in *Huff* does nothing to relieve the FDIC, as the successor in interest to the RCSA, of the Association's common law duty to indemnify passively negligent persons for the actively negligent actions of the Association's former officers and directors.

■ The FSLIC also relies on a contract between the FSLIC in its two capacities as a basis for avoiding any obligation to indemnify the Accountants. The FSLIC in its corporate capacity submits that when it contracted with the FSLIC in its receiver capacity to assume certain liabilities and assets of RCSA, it expressly excluded any duty to indemnify other persons such as the Accountants. Section 2 of this "Receiver Agreement" addresses the liabilities assumed by the Corporation from the Receiver:

> (a) The CORPORATION hereby assumes and undertakes to pay and discharge those liabilities of the RECEIVER not assumed by the ACQUIRING ASSOCIATION, except that the CORPORATION specifically does not assume or agree to discharge, and by virtue of this AGREEMENT does not so assume or agree to discharge ... (iii) any obligation of the CLOSED ASSOCIATION to indemnify controlling persons, directors, officers, *or other persons* as a result of *suits arising from claims described in § 1 of this Agreement.*

(emphasis added). In turn, § 1 of the Receiver Agreement relates to the assets of the RCSA that were assumed by the FSLIC–Corporation, including the right to known and unknown claims against the RCSA's former "accountant [or] auditor...." The FSLIC argues that by virtue of this provision, "other persons" such as the accountants may not look to FSLIC for indemnity.

The court finds FSLIC'S reliance on this contractual provision to be either moot or misplaced. To the extent that the contract seeks to exclude any obligation to "indemnify" the Accountants for any claims made against them by the FSLIC, the provision excludes an obligation that can never arise under the common law rules. As noted, if there is negligence on the part of the RCSA, the Accountants' affirmative defense of contributory negligence operates to bar any claim the FDIC might otherwise have against the negligent Accountants. *See supra* at 1440–1441. The Accountants' right to indemnity from the RCSA *on the RCSA's claims* is subsumed within the defense of contributory negligence, and therefore, indemnity from the FDIC for the claims described in § 1 of the Receiver Agreement will never become an issue. The defense of contributory negligence, however, is not addressed by contract, and this defense remains available.

In addition, the FSLIC may not rely on the Receiver Agreement to exclude its obligation to indemnify the Accountants for any claim made by the *Comeaus.* It is only for those claims resulting from "suits arising from claims described in § 1 of [the] Agreement" that § 2 of the Agreement relieves the FSLIC of any duty to indemnify "other persons." The claims owned and asserted by the Comeaus, however, are not among the assets described in § 1, which addresses only assets of the

closed Association assumed by the FSLIC. The court also notes that under § 2 of the Agreement, the FSLIC Corporation expressly assumed all liabilities of the FSLIC Receiver that were not assumed by the acquiring association and not specifically excluded. *Cf. In re F & T Contractors, Inc.*, 718 F.2d 171, 180–81 (6th Cir.1983) (FDIC–Corp. not liable for obligation not expressly assumed). The court concludes that the Receiver Agreement does not relieve the FDIC of its possible obligation to indemnify the Accountants for the claims asserted by the Comeaus.

### B. Sovereign Immunity Defense

■ The FDIC asserts that to the extent the Accountants allege any direct claims against the FDIC for its regulatory activities, such claims are barred by the discretionary function exception to the Federal Tort Claims Act. *See, e.g., FSLIC v. Smith*, 721 F.Supp. 1039, 1047 (E.D.Ark. 1989). The Accountants' reply brief makes clear that they assert no direct claims against the FSLIC based on its activities as an agency of the government, but only claims against the RCSA that the FSLIC has assumed as its successor. Thus, the FDIC's defense of sovereign immunity is inapplicable in this case.

### C. Dismissal of Counts II and IV

The FDIC also moves for dismissal of Counts II and IV of the Accountants' counterclaims, which allege that the failure of RCSA to supply information to the Accountants amounts to unintentional or negligent misrepresentation. This motion is based on two grounds.

■ First, the FDIC contends that Kansas does not recognize the tort of negligent misrepresentation unless it is expressly created by statute. In support, FDIC calls attention to *Johnson v. Geer Real Estate Co.*, 239 Kan. 324, 330–31, 720 P.2d 660 (1986), where the court held that real estate brokers are subject to liability for negligent misrepresentation for failure to ascertain and disclose material information that the broker should have known. The court based its decision upon express statutory language in the Real Estate Brokers' and Salespersons' License Act, K.S.A. §§ 58–3034 *et seq.*, which imposes a duty upon licensed real estate brokers to "ascertain and disclose" material information relating to the brokered property. In reaching this conclusion, the court quoted *in dicta* from Altenhofen, *Potential Liability of Real Estate Brokers and Salesmen for Misrepresentation and Nondisclosure in Kansas*, 52 J.Kan.Bar 9, 15–16 (1983), wherein it is stated that negligent misrepresentation " 'clearly is a right of action which is not available under Kansas common law.' " *Johnson*, 239 Kan. at 331, 720 P.2d 660.

The court has considerable doubts as to the merits of this statement. *See Dodd v. Boles*, 137 Kan. 600, 606, 21 P.2d 364 (1933) (seller of stock liable for misrepresentations as to financial condition of company, " 'without regard to whether or not the seller knew the statements to be false, or acted recklessly in making them, or intended to deceive;' " quoting *Bice v. Nelson*, 105 Kan. 23, 180 P. 206, syl. ¶ 4 (1919)); *see also DuShane v. Union Nat'l Bank*, 223 Kan. 755, 760, 576 P.2d 674 (1978) (discussing fiduciary and business relationships giving rise to a duty to discover and disclose). Nonetheless, it is unnecessary to address this argument, because it premised on the erroneous view that a right to indemnity arises only if the party seeking indemnity has stated a particular cause of action—such as negligent misrepresentation. Although the Accountants have characterized their claims to indemnity as "independent causes of action," the only true cause of action they have stated is one for indemnity. It is irrelevant whether the agents of the RCSA owed and breached either a statutory or common law duty to the Accountants by failing to discover and disclose material information. As to the defendants' claims to indemnity from the FDIC, the defendants need only establish the breach of a duty to the injured party, which breach was the primary wrongful act in causing this party's injuries. *See infra* at 1446–1447.

■ The second ground in support of FDIC's motion to dismiss Counts I and IV

is that defendants have failed to comply with the particularity requirements of Fed. R.Civ.P. 9(b). The Accountants' claim against the FDIC alleges that if there were errors and material misstatements in the 1984, 1985, and 1986 financial statements of RCSA as audited by the accountants, then this was caused by "(i) RCSA's negligent or intentional failure" to provide the accountants "with relevant information and documentation concerning RCSA's financial condition and (ii) RCSA's negligent or intentional failure to provide complete and truthful answers" to the accountants' "inquiries about RCSA's financial condition." Doc. 264, at 42, 47–48 (¶¶ 25 & 44 of counterclaims).

The court initially notes that the claims can be construed as allegations of "fraud" only to the extent that the "negligent" failure to disclose is pleaded alternatively as an "intentional" failure. Thus, even if the court were to agree with the FSLIC, the appropriate course of action would be either to strike the reference to "intentional failure" rather than the entire count, or to grant the Accountants leave to amend, as is the practice in this district. *See, e.g., NAL II, Ltd. v. Tonkin*, 705 F.Supp. 522, 526 (D.Kan.1989). In any event, the court finds the Accountants' averments to satisfy the requirements of Rule 9(b). The court must read the pleading in conjunction with the liberal pleading requirements of Fed.R. Civ.P. 8, and there is no requirement that the Accountants plead detailed evidentiary matter. *See Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986). The essence of the Accountants' allegation is that their audits for the stated years conformed to generally accepted accounting principles, based on the information that was supplied to them, and that any defect in the audits was caused by the acts of omission of others at RCSA upon whom the Accountants reasonably relied. Under these circumstances, no greater detail at the pleading stage is required to inform the FSLIC of the nature and substance of the allegations made against it.

D. Dismissal of Count V

Count V of the Accountants' amended counterclaim against the FSLIC seeks to recover under contract for Grant Thornton's services rendered in the 1986 audit. The FDIC contends that this obligation was assumed by the First Federal Savings and Loan Association in Lincoln, Nebraska— the acquiring association of the acceptable assets and liabilities of RCSA. In its reply, the FDIC has attached a copy of the acquisition agreement between it and First Federal, and the court therefore construes the motion to dismiss as one for summary judgment. Fed.R.Civ.P. 12(b). The Accountants offer no substantive challenge to this argument, but argue only that the FDIC is relying on matters outside the pleadings. The court therefore construes this as an unopposed motion and will grant the motion for summary judgment on Count V. D.Kan. Rule 206(g).

IV. *Claims for Indemnity from A.J. Schwartz*

The Accountants claim that they are entitled to indemnity from third-party defendant A.J. Schwartz for any amount for which they are found to be liable on the claims made against them by the plaintiffs. Schwartz moves for dismissal of all claims made against him.

Schwartz was the lawyer for the Comeaus during their negotiations for the stock sale agreement that was closed on February 10, 1986. It is undisputed that Schwartz did not become a member of the board of directors of RCSA until April 19, 1986, and that the sole basis for the indemnity claim against him relates to allegedly false representations made at the February 10 closing by him to defendant Grant Thornton. These misrepresentations concern the "Compadre loan," which was a $1,000,000 loan that was secured by property valued on the books of RCSA at $1,500,000. Despite its book value, the Compadre property had been appraised by a Vern Englehorn in August 1985 at a value of only $585,000. All parties, including the Accountants, appear to have been aware of this August 1985 appraisal as of the date of the closing. However, the Accountants allege that a few days before the

February 10 closing, Englehorn informed Schwartz that the Compadre property was worth only $200,000, and that this appraisal was not a "special bankruptcy appraisal"—which might be less reliable than other appraisals. The Accountants contend that Schwartz, and also the Comeaus, withheld their knowledge of Engelhorn's revised $200,000 appraisal, and further contend that these persons led the Accountants to believe that the August 1985 appraisal was a less reliable bankruptcy appraisal. The Accountants allege that had they been aware of these two pieces of information, they would have insisted on a revision of RCSA's financial statements.

The court initially notes that the Accountants make no attempt to cast their claims for indemnity against Schwartz as "independent claims" for relief. *See supra*, at 1439–1440. To the extent that the Auditors might seek recovery against this third-party defendant for independent claims, this would not be a third-party complaint, and thus, would be subject to dismissal. *See* 6 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 1446, at 356–61 (2d ed. 1990) (impleader must be denied where claim against third-party is separate or independent from the main action and does not derive from potential liability in the main action). Thus, the court construes the entire complaint against Schwartz to allege claims for indemnity under the several theories.

■ Third-party defendant Schwartz opposes the Accountants' claims to indemnity on several grounds. The court first addresses a procedural challenge by Schwartz questioning the propriety of any claim to indemnity at this time. Schwartz argues that even assuming the Auditors have a viable claim for indemnification, their claim is premature and will accrue only when they have satisfied plaintiff's judgment. The federal rules dispose of this procedural challenge:

> *At any time after commencement of the action* a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all of part of the plaintiff's claim against the third-party plaintiff.

Fed.R.Civ.P. 14(a) (emphasis added).[8] Because Kansas affords a right of indemnity to a defendant whose negligence is only "passive" or "secondary," the determination of other parties' alleged "active" or "primary" negligence is proper in this action.

■ Turning to the substantive challenges, Schwartz contends that he owed no duty to disclose "work product" to the "nonclient" Accountants, and that under the rule of *McCleskey v. Noble Corp.*, 2 Kan.App.2d 240, 245, 577 P.2d 830 (1978), the absence of such a duty to the Accountants defeats their claim to indemnity. In *McCleskey*, plaintiff was an employee who had been injured by a crane during the course of his employment. After recovering workmen's compensation benefits from his employer, the employee sued the operator of the crane, who in turn attempted to implead the employer for indemnification. The court framed the precise issue before it to be "whether the Workmen's Compensation Act [of Kansas] abrogates *the common law right* of a passively negligent third party, who is sued by an injured employee, to be indemnified by an actively negligent employer who has already paid benefits under the Act." 2 Kan.App.2d at 242, 577 P.2d 830 (emphasis added). The court found that the Kansas Workmen's Compensation Act had abrogated this common law right and cited other workmen's compensation cases establishing the rule that "denies indemnity unless based on an

---

8. For that matter, the Accountants' assertion of indemnity claims at this time also comports with Kansas third-party practice. *See, e.g., Denneler v. Aubel Ditching Serv., Inc.,* 203 Kan. 117, 453 P.2d 88, syl. ¶ 3 (1969). The argument of Schwartz confuses the distinction between indemnity, and contribution or subrogation, the latter two of which may be sought only when the judgment or debt has been paid in full. *See, e.g., Haysville U.S.D. No. 261 v. GAF Corp.,* 233 Kan. 635, 646, 666 P.2d 192 (1983) (subrogation); *Cipra v. Seeger,* 215 Kan. 951, 953, 529 P.2d 130 (1974) (contribution).

independent *contractual* duty or a special legal relationship 'other than arising out of participation in a joint wrong to an injured party.'" *Id.* at 245, 577 P.2d 830 (emphasis in original) (quoting *Peak Drilling Co. v. Halliburton Oil Well Cement Co.*, 215 F.2d 368, 371 (10th Cir.1954)). Thus, the court found that the party seeking to implead an employer must establish the existence of some "independent legal duty" owed to it by the employer, and rejected the argument that "an actively negligent tortfeasor's *common law responsibility to indemnify* a passively negligent tortfeasor is such an 'independent legal duty.'" *Id.* (emphasis added). *See also Beach v. M & N Modern Hydraulic Press Co.*, 428 F.Supp. 956, 961–63 (D.Kan.1977).

The court finds the reliance on *McCleskey* and the other workmen's compensation cases cited by it to be misplaced. Because the Workmen's Compensation Act grants immunity to employers for their negligent acts against employees, the *McCleskey* court recognized the need for a legal duty existing independent of that which the employer at common law owed to the employee. In other words, these cases hold that a would-be third-party plaintiff may not assert a claim indirectly that the statute forbids the plaintiff-employee from asserting directly. Where no statutory or other source has abrogated the plaintiff's right to sue an actively negligent tortfeasor, however, the third-party plaintiff retains his common law right to seek indemnity based upon this active tortfeasor's breach of duty owed to the plaintiff. Thus, a defendant seeking indemnity from a joint tortfeasor is required only to prove the breach of an *"obligation to plaintiff or a third party* that cannot be legally resisted...."[9] *Cason v. Geis Irrigation Co.*, 211 Kan. 406, 413, 507 P.2d 295 (1973) (emphasis added). *See also Kennedy v. City of Sawyer*, 4 Kan.App.2d 545, 608 P.2d 1379, syl. ¶ 1, *rev'd on other grounds*, 228 Kan. 439, 618 P.2d 788 (1980). In this case, no statutory or other source prevents the Comeaus from suing Schwartz directly, and thus, the third-party plaintiffs' common law right to indemnity from Schwartz is unaffected. For purposes of determining the Accountants' right to indemnity from Schwartz, the Accountants need only establish that Schwartz has breached a duty owed to the injured party, which breach may properly be considered as the active or primary wrongful act in causing the plaintiffs' injuries.[10]

Because the bulk of the position staked out by Schwartz proceeds from the erroneous premise of the need for an independent legal relationship between him and the Accountants, this conclusion disposes of most of his arguments. Thus, Schwartz's argument finds no support in *Tew v. Arky, Freed, Stearns, P.A.*, 655 F.Supp. 1573

---

**9.** Under the related doctrine of subrogation, which involves a substitution of one person to assert the rights of another, one who is "obligated to respond and does pay damages to a third person" may recover from the primary tortfeasor on the basis of this tortfeasor's breach of duty owed to the injured third party. *Fenly v. Revell*, 170 Kan. 705, 228 P.2d 905, syl. ¶ 2 (1951).

**10.** In any event, it appears that the existence of some duty on the part of the Schwartz toward the Accountants inheres in the nature of the Accountants' indemnity claim against Schwartz. The Accountants claim that their contribution to the injury, if any, should be deemed passive insofar as they had a right to rely upon Schwartz to disclose material information actually known by him. In the absence of some ethical attorney-client privilege preventing Schwartz from disclosing this information, the court cannot say as a matter of law that Schwartz had no such duty. As in all cases of misrepresentation, the essential feature of the relationship alleged to exist between Schwartz and the Accountants is that of the reasonable, justifiable, and detrimental reliance of one upon the false representations of another. *See, e.g., Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545 (1980) (elements of fraud are normally a question of fact); *Hutchinson Travel Agency, Inc. v. McGregor*, 10 Kan.App.2d 461, 464, 701 P.2d 977, *review denied*, 238 Kan. 877 (1985); *see also DuShane v. Union Nat'l Bank*, 223 Kan. 755, 761, 576 P.2d 674 (1978) (person who obtains no advantage from suppressing or concealing information must be shown to have made the representations to plaintiff with knowledge or reckless disregard of its falseness); *Russell v. Community Hosp. Ass'n*, 199 Kan. 251, 255, 428 P.2d 783 (1967) (hospital would be entitled to indemnity against building architect and constructor for their primary negligence if the hospital "relied upon the skill of these people in the development of the premises").

(S.D.Fla.1987), *aff'd mem.*, 846 F.2d 753 (11th Cir.), *cert. denied*, 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988). In *Tew*, the court found that an attorney had no duty to disclose certain inculpating information concerning his client to the auditors of the attorney's client. Because the attorney had knowledge of " 'facts which might conceivably constitute a legal problem,' " *id.* at 1574 (quoting ABA Statement), the attorney-client relationship was implicated in *Tew*. By contrast, the Accountants in this case were not auditing the Comeaus as individuals, but their corporation, and Schwartz has expressly disavowed any suggestion that he was representing anyone other than the Comeaus at the February 10 meeting. Nor does Schwartz allege that he had knowledge of any information that the Comeaus had requested "be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to [the Comeaus]." DR 4–101(A), Code of Professional Responsibility.[11] Schwartz has made no serious attempt to invoke either the attorney-client privilege or the litigation-related privilege of "work product," Fed.R.Civ.P. 26(b)(3), as justification for his failure to disclose the information relating to the Compadre loan.

■ Schwartz also raises the argument that the Auditors are not entitled to indemnity because they are intentional tortfeasors who have acted recklessly in breach of their fiduciary duty to the RCSA. This question of fact, however, is the precise issue that is in dispute. Moreover, the complaint does not allege *only* intentional, reckless, or otherwise "active" malfeasance, in which case defendants could avoid all liability simply by proving the absence of intentional misconduct. To the contrary, plaintiffs have also alleged *negligent* conduct on the part of the Accountants. Because plaintiffs might conceivably prevail

only in proving that the Accountants negligently performed their services, the right to indemnity is implicated on the face of the pleadings. *Cf. Pyramid Condominium Ass'n v. Morgan*, 606 F.Supp. 592, 596 (D.Md.1985) ("if it is clear ... that the defendant's (third-party plaintiff) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim").

■ Finally, Schwartz briefly suggests that the Auditors' claims to indemnity are inappropriate because no plaintiff seeks damages for losses on the Compadre loan, which is the only loan for which Schwartz is alleged to have made misrepresentations. Although not denominated as such, this appears to be a potentially meritorious argument going to the issue of causation. Even assuming the existence of misrepresentations by Schwartz at the February 10 closing, the Accountants must also establish that his alleged misrepresentations were a proximate cause of the Comeaus' or RCSA's claimed losses. *See Wichita Federal Savings & Loan Ass'n v. Black*, 245 Kan. 523, 532, 781 P.2d 707 (1989) (sufficient evidence was presented to establish that savings institution's loss was caused by former president's negligence). The FDIC has stated that it has no intention of seeking damages from the Accountants "for loan losses incurred on the Compadre loan." (Eht. A of Schwartz response). Nonetheless, the Accountants claim that knowledge of the Compadre loan deficiencies, as known by Schwartz, would have prompted them to (1) withdraw the September 25, 1985 audit report; (2) investigate the need for a loan provision with respect to the Compadre loan; (3) conclude that such a provision was necessary; and (4) insist that the 1985 financial report be revised. As a result, the Auditors claim they

---

**11.** The Code of Professional Responsibility governed the conduct of Kansas attorneys at the time of the February 10, 1986 meeting. *See* Rule 226 (1990 Kan.Ct.R.Ann.) (Prefatory Rule adopting Model Rules of Professional Conduct). *Cf.* Rule 1.6 of the Model Rules of Professional Conduct & Kansas comment (lawyer not permitted to speculate whether information relating to representation might be embarrassing or detri-

mental). To the extent that Schwartz might seek to bring the information he had received from Englehorn within the attorney-client privilege, it appears that Schwartz's defense may conflict with the interests of the Comeaus. Schwartz may assert the privilege only insofar as his alleged knowledge of the deficiencies with the Compadre loan somehow implicates the Comeaus.

would have discovered at least one, "and quite possibly more or all" of the errors in the 1985 report. Doc. 497, at 14.

Given the number of inferences required to establish a causal responsibility on the part of Schwartz, the court believes that it is indeed a thin reed upon which the Accountants' theory is based. Bearing in mind, however, that the office of summary judgment is to indulge the opposing party in all reasonable inferences, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) and that issues of proximate cause are normally determined by the finder of fact, *St. Clair v. Denny*, 245 Kan. 414, 420, 781 P.2d 1043, 1047 (1989), the court cannot say at this time that the Accountants' reed is so thin as to be unable to support a genuine issue of fact.

In making this finding, the court has disregarded the Accountants' own allegation that the Comeaus had the same knowledge regarding the Compadre loan as did Schwartz. Even assuming a causal connection between Schwartz's representations and plaintiffs' injuries, the alleged knowledge and failure to disclose by the Comeaus is an absolute bar to any recovery by either the Comeaus individually or as agents for the RCSA. Thus, if the court were to accept this particular allegation of the Accountants as true, it would render moot any claim to indemnity that the Accountants might have against Schwartz. For this reason, the court has disregarded the Accountants' claims of fraud and negligence on the part of the Comeaus.[12]

## V. Claims for Indemnity from the Comeaus

■ The Comeaus have joined in the motion of A.J. Schwartz to dismiss all claims for indemnity made against them.

As noted, *supra* at 1440–1441, the Accountants' claims for indemnity from the Comeaus are superfluous because these claims are entirely subsumed within the affirmative defense of contributory negli-

gence. If the Accountants can establish any degree of negligence on the part of these plaintiffs, the common law rule of contributory negligence operates as an absolute bar to any claim the Comeaus might have against the Accountants, absent a showing of wanton or reckless conduct on the part of the Accountants. Moreover, if the Comeaus, who acted within the scope and course of their duties as directors of RCSA, are found contributorily negligent, then such negligence is imputable to RCSA as their principal. Any claim the RCSA might have against the Accountants would accordingly be barred. Because no claim to indemnity from the Comeaus can ever arise, the Comeaus motion to dismiss these claims is moot.

## VI. Motion to Strike Punitive Damages

■ The Accountants have filed a motion to strike plaintiffs' claim for punitive damages for failure to comply with K.S.A. § 60–3703, which provides in relevant part:

No tort claim for punitive damages shall be included in a petition or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed.

The Accountants argue that plaintiffs' failure to petition the court for leave to file a punitive damages claim requires dismissal of this claim.

Judge Saffels addressed this precise issue in *NAL II, Ltd. v. Tonkin*, 705 F.Supp. 522 (D.Kan.1989), and concluded that K.S.A. § 60–3703 is a purely procedural statute, implicating no substantive rights of the parties. *Id.* at 528. The court concurs in Judge Saffels' well-reasoned analysis, and finds that plaintiffs have complied with Fed.R.Civ.P. 9(g), which is the only applicable federal rule relating to the pleading of special damages. Accordingly, defendants' motion to strike the claim for punitive damages will be denied.

12. Because the existence of contributory negligence on the part of the Comeaus will obviate any need for the Accountants to seek indemnity from the third-party defendants, there appears to be the possibility of conflict in defenses of the Comeaus and of Schwartz.

## VII. *Motion for Review of Magistrate's Order*

The final matter before the court is Grant Thornton's motion to review the order of the magistrate denying its motion to compel answers to interrogatories.

 The standard of review of a magistrate's order is set forth in 28 U.S.C. § 636. As to nondispositive pretrial matters, the district court reviews the magistrate's order under a "clearly erroneous or contrary to law" standard of review. *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461–62 (10th Cir.1988). The clearly erroneous standard requires that the court affirm the decision of the magistrate unless "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 1464 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)). Because a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is abused. *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 154 (W.D.N.Y. 1982). *See also Sil–Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir.1990).

Interrogatory No. 2 of the Accountants' second set of interrogatories requested information concerning loans other than the "Halle loans" identified in plaintiffs' amended complaint. *See supra* at 1437–1438. Because plaintiffs' complaint seeks damages only for losses resulting from deficiencies relating to the Halle loans, plaintiffs refused to answer this interrogatory on the grounds that such information was burdensome and irrelevant. The Accountants moved to compel answers, advancing three successive sets of arguments in support of their motion.

 In their original motion to compel, the Accountants argued only that the information concerning non-Halle loans was relevant because it bore directly on the question of how the RCSA came to be insolvent. It was the position of the Accountants that the "financial demise" of the RCSA was the result of changes in the economic conditions and the mismanagement by its officers and directors. The magistrate rejected this argument, noting that the reasons for the insolvency of the RCSA are not in issue in this action. Doc. 242, at 3. Because plaintiffs seek to hold the Accountants liable only for the losses on certain Halle loans, and not for the failure of the RCSA, the magistrate found that the requested information was neither relevant nor likely to lead to relevant information. *See* Fed.R.Civ.P. 26(b)(1).

The court is in complete agreement with the magistrate's rejection of this argument. The Accountants offered no explanation as to why the RCSA's insolvency was relevant to any issue in dispute, and there is certainly none that is obvious from the complex facts in this lawsuit. The magistrate was not required to supply the rationale that the Accountants themselves were unable to find. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991) ("court will not construct arguments or theories for the [litigants] in the absence of any discussion of those issues").

 Temporarily abandoning the insolvency angle, the Accountants recast the argument in their reply memorandum, stating for the first time that evidence indicating "mismanagement and economic conditions" was relevant to "the proximate cause of RCSA's losses," instead of the reasons for insolvency. Doc. 236, at 7.[13]

---

**13.** In fact, the Accountants raised two new arguments in the reply, one of which they have prudently omitted from the present motion. The other argument raised in the reply was that the "quality and nature of, and the documentation concerning" the non-Halle loans might tend to prove how the Accountants had audited the Halle loans. Doc. 236, at 7. Under Fed.R.Evid. 404(b), however, "[e]vidence of other ... acts is not admissible to prove the character of a per-

son in order to show action in conformity therewith." Regardless of how commendably the defendants may have comported themselves with respect to other loans, these actions are not admissible for the purpose of proving circumstantially how the defendants may have audited the Halle loans. Fed.R.Evid. 404(a). Nor did defendants otherwise make any showing of how this information might reasonably be calculated

The Accountants did not elaborate further, and instead waited to develop this argument until the magistrate had denied their motion to compel. The magistrate's denial gave new life to the Accountants' arguments, and they filed a motion to reconsider that presented an entirely new theory and a brief explanation for the cursory statement made in their reply memorandum. The Accountants explained: "[I]f the other 'bad' loans were similar to the ones plaintiffs complain about, this would suggest that the losses were caused by factors other than auditor malpractice, factors such as mismanagement and changes in economic conditions." Doc. 249, at 5. In addition, the Accountants conceived a reason for the relevancy of the financial demise of the RCSA. In the motion to reconsider, the Accountants argued for the first time that the Association's insolvency was relevant because it was this insolvency that caused the Comeaus' stock to become worthless. The magistrate refused to reconsider, stating that the motion raised new arguments that could have, but were not, presented in the original motion to compel. Doc. 281.

The refusal to grant relief in a motion to reconsider is reviewed under an abuse of discretion standard, *see Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir.1988), which is the functional equivalent of the clearly erroneous standard of review for a magistrate's order. *Cooter & Gell v. Hartmarx Corp.*, — U.S. —, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990). A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence. *Anderson v. United Auto Workers*, 738 F.Supp. 441, 442 (D.Kan.1990); *Taliaferro v. City of Kansas City*, 128 F.R.D. 675, 677 (D.Kan. 1989). An improper use of the motion to reconsider "can waste judicial resources and obstruct the efficient administration of justice." *United States ex rel. Houck v. Folding Carton Admin. Comm.*, 121 F.R.D. 69, 71 (N.D.Ill.1988). Thus, a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider. *Renfro v. City of Emporia*, 732 F.Supp. 1116, 1117 (D.Kan. 1990); *Butler v. Sentry Ins. A Mutual*, 640 F.Supp. 806, 812 (N.D.Ill.1986). For these same reasons, a court may decline to entertain new arguments raised for the first time in the reply, particularly where the argument involves complex facts or questions. *See, e.g., United States v. Jenkins*, 904 F.2d 549, 554 n. 3 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990); *Glad v. Thomas County Nat'l Bank*, No. 87–1299–C, slip op. at 2 (D.Kan. Oct. 10, 1990) (1990 WL 171068).

In refusing to consider the Accountants' new arguments, both in the reply and in the motion to reconsider, the magistrate acted fully within his discretion. The remote relevancy of "mismanagement or economic conditions" to the *claimed* losses in this case was suggested for the first time in the reply and did not attain any degree of colorable coherency until the motion to reconsider. The court also finds that the numerous Halle loans, for which defendants have had full discovery, are sufficient to establish any claim that "mismanagement or economic conditions" were the cause of the loss on the Hall loans. Thus, no prejudice inures to defendants from denying discovery of this unreasonably cumulative evidence. Moreover, it was not until the motion to reconsider that the Accountants chose to offer any explanation for the possible relevancy of the reasons for the Association's failure. In a case such as this, involving numerous complex factual and legal issues, it is the obligation of counsel, not the court, to develop the legal theories. The court has no difficulty concluding that the magistrate was not clearly erroneous in refusing to compel an answer to Interrogatory No. 2.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff FDIC's motion to dismiss counterclaims for indemnity by de-

to lead to the discovery of relevant information. Fed.R.Civ.P. 26(b)(1).

**1452**

fendants Grant Thornton and Fox & Company (Doc. 477) be denied.

IT IS FURTHER ORDERED that plaintiff FDIC's motion to dismiss counterclaim V of defendants Grant Thornton and Fox & Company (Doc. 477) be granted.

IT IS FURTHER ORDERED that the motion of third-party defendant A.J. Schwartz to dismiss third-party plaintiff's claims (Doc. 483) be denied.

IT IS FURTHER ORDERED that the motion of Roger, David, and Charles Comeau to dismiss counterclaims of defendants Grant Thornton and Fox & Company (Doc. 484) be denied as moot.

IT IS FURTHER ORDERED that defendants' motion to strike plaintiffs' punitive damage claims (Doc. 261) be denied.

IT IS FURTHER ORDERED that defendant Grant Thornton's objections to magistrate's order (Doc. 313) be overruled.