No. 55,403

BRUCE L. KLINE, *Plaintiff*, v. MULTI-MEDIA CABLEVISION, INC., a South Carolina Corporation, *Defendant*.

(666 P.2d 711)

Opinion filed July 15, 1983.

*J. Thomas Marten*, of Bremyer & Wise, P.A., of McPherson, argued the cause and was on the brief for the plaintiff.

*Debra J. Arnett*, of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, argued the cause and *Quentin E. Kurtz*, of the same firm, was with her on the brief for the defendant.

The opinion of the court was delivered by

HERD, J.: This is a certified question from the United States District Court for the District of Kansas, Honorable Patrick F. Kelly, judge. The question arises from an actual controversy between the parties.

The facts are undisputed. In October of 1980, employees of Multi-Media Cablevision, a South Carolina corporation, were working on the campus of Central College in McPherson. In the course of their employment, they removed a manhole cover. While the cover was displaced Bruce Kline, president of the

college, rode by the work site on his bicycle. His bicycle hit the open manhole, throwing Kline violently forward over the handlebars. As a result he suffered injuries, including a broken shoulder.

Bruce Kline filed suit against Multi-Media in the McPherson County District Court in April of 1981. The Multi-Media employees and agents were not sued. The petition alleged in part "the failure to replace the cover on the open manhole, failure to warn that the cover was removed and failure to erect a barricade or barrier or to otherwise use safety devices around the open manhole" supported a claim for compensatory and punitive damages.

Multi-Media removed the case to federal court in May of 1982. After discovery, Multi-Media filed a motion for summary judgment on the punitive damages issue. Pursuant to authority of K.S.A. 1982 Supp. 60-3201, Judge Kelly certified the following question to this court:

"Under Kansas law, may a corporation be held liable for punitive damages arising from an act of an agent or employee, within the scope of the agent's or employee's employment, when the corporation, through its board of directors or an officer, has neither directed, authorized nor ratified the act?"

The issue presented is thus clearly drawn. As a preliminary matter let us consider two well-established legal doctrines pertinent in this case. First, a corporation is liable for the torts of its agent when committed within the scope of the agent's authority and course of employment even though it did not authorize or ratify the tortious acts. *Russell v. American Rock Crusher Co.,* 181 Kan. 891, 894, 317 P.2d 847 (1957). A related rule of law states a principal is responsible for the torts of its agent where the tortious acts are incidental to and in furtherance of the principal's business, even though outside the scope of the agent's authority. *Williams v. Community Drive-In Theater, Inc.,* 214 Kan. 359, 520 P.2d 1296 (1974). Second, punitive damages are appropriate when the elements of fraud, malice, gross negligence or oppression accompany the wrongful act. Such damages are awarded to punish the wrongdoer for his malicious, vindictive, willful or wanton invasion of the injured person's rights. They also serve as an example to restrain and deter others from the commission of such wrongs. *Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 63, 643 P.2d 100 (1982);

*Newton v. Hornblower, Inc.,* 224 Kan. 506, 525, 582 P.2d 1136 (1978).

The question presented here is when may a corporation be held liable for punitive damages for the wrongful acts of its employees committed within the course of their employment? There are two possible answers. First, as Mr. Kline argues, a corporation could be held liable for punitive damages whenever the employee, acting within the scope of employment, could be held liable. In other words:

"[I]f the servant has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the servant's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages." *Stroud v. Denny's Restaurant,* 271 Or. 430, 435, 532 P.2d 790 (1975).

This is the "vicarious liability" rule and is followed by a majority of the courts. Prosser, Law of Torts § 2, p. 12 (4th ed. 1971).

The vicarious liability rule is focused on the deterrence aspect of punitive damages. The theory is such a rule will encourage employers to exercise closer control over their employees and thereby reduce the probability of the occurrence of torts which would support a punitive damages award. Prosser, Law of Torts § 2, p. 12. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 291, 294 N.W.2d 437 (1980). Plaintiff argues Kansas follows this rule. See *Wheeler & Wilson Mfg. Co. v. Boyce,* 36 Kan. 350, 13 Pac. 609 (1887).

The second possible answer to the question is that a corporation might be held liable for punitive damages resulting from acts of its employees only when it has directed or ratified those acts. The Restatement (Second) of Torts § 909 (1977), embodies this position:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

"(a) the principal or a managerial agent authorized the doing and the manner of the act, or

"(b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or

"(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

"(d) the principal or a managerial agent of the principal ratified or approved the act."

See also Restatement (Second) of Agency § 217C (1957). This is called the "complicity" rule. See Morris, *Punitive Damages in Personal Injury Cases*, 21 Ohio St. L.J. 216, 221 (1960). It focuses on the first reason for the award of punitive damages—punishment of the wrongdoer. The rule recognizes that ordinarily it is improper to impose the burden of punitive damages on one who is innocent of wrongdoing. Restatement (Second) of Torts § 909 comment *b* (1977). The complicity rule is followed by a "considerable minority" of jurisdictions. Prosser, Law of Torts § 2, p. 12 (4th ed. 1971).

Mr. Kline argues Kansas is already committed to the vicarious liability rule because of this court's holding in *Wheeler & Wilson Mfg. Co. v. Boyce*, 36 Kan. 350. In that case Wheeler and Wilson sold a sewing machine to Boyce's wife. Claiming Mrs. Boyce had not paid the balance due on the machine the company directed its general agent to bring an action of replevin against Mrs. Boyce to recover the machine. Authorities were unable to find the sewing machine so Wheeler and Wilson's general agent directed the filing of an affidavit stating Boyce had the machine and would not surrender it. This was done and, consistent with the law of the day, Mr. Boyce was arrested. He was kept in jail for ten days. The replevin action resulted in a judgment for Mrs. Boyce. Mr. Boyce then filed an action for false imprisonment and a jury awarded him $1,000.

One of the issues on appeal was the propriety of an instruction directing the jury it could award punitive damages against the corporation. In holding such an instruction was proper under the facts of the case the court stated:

"It is a well-established principle of jurisprudence, that corporations may be held liable for torts involving a wrong intention such as false imprisonment, and exemplary damages may be recovered against them for the wrongful acts of their servants and agents done in the course of their employment, in all cases and to the same extent that natural persons committing like wrongs would be held liable. In such cases the malice and fraud of the authorized agents are imputable to the corporations for which they acted. This principle is too well settled to require argument, and the authorities sustaining it are numerous and well-nigh unanimous." 36 Kan. at 353.

Multi-Media argues *Wheeler & Wilson* is distinguishable because that case involved false imprisonment, an intentional tort. Here, on the other hand, the employees were guilty of at most gross negligence. Thus, Multi-Media claims, Kansas follows the vicarious liability rule only in cases based on intentional torts.

*Wilson & Wheeler* is indeed a false imprisonment case. If limited to its facts it applies only to intentional torts. In addition, it was decided in 1887 and has never been specifically approved or overruled. Thus we conclude *Wilson & Wheeler* is not authority for either the vicarious or complicity rule of corporate liability. As such this court is free to adopt whichever rule it deems appropriate in response to this certified question.

As previously stated the virtue of the vicarious liability rule is deterrence. Theoretically a corporation, in fear of a punitive damages award against it, will exercise stricter control over its employees thereby preventing the occurrence of future wrongful acts. Arguably this is true. In this case it could be speculated if Multi-Media had been fearful of a punitive damage award and thereby supervised its employees more closely the accident might never have happened. On the other hand, there are certainly some instances in which no amount of supervision and control will prevent an employee from engaging in wrongful conduct. Further, it is conceivable that corporate liability for compensatory damages for the acts of its employees provides a sufficient impetus to insure adequate supervision of its employees. As was stated in Morris, *Punitive Damages in Tort Cases*, 44 Harv. L. Rev. 1173, 1200 (1931):

"The operation of the doctrine of punitive damages gives the plaintiff an undeserved windfall that has nothing to do with the reparative function, which is duly served (at least in theory) by the allowance of compensatory damages."

Regarding the other purpose behind punitive damages, a punitive damages award against a corporation in all cases where the employee's conduct would support such an award does little to assure the wrongdoer will always be punished. It can be argued the corporation acts only through its agent and, as such, the corporate entity is the wrongdoer. Prosser, Law of Torts § 2, p. 12 (4th ed. 1971). In reality, however, a line must be drawn. In some cases the corporation will be as guilty as the employee; in others it will be completely innocent. The vicarious liability rule does not distinguish these cases.

Alternatively the complicity rule as set out in the Restatement serves well both theoretical justifications for awarding punitive damages. First, it furthers the deterrence theory by putting the corporation on notice that if (1) a managerial agent authorizes,

approves or ratifies the act, (2) the act is performed by a managerial employee acting within the scope of employment, or (3) the corporation or a managerial employee was reckless in employing or retaining the acting employee, the corporation may be liable for punitive damages. This should cause the corporation to exercise stricter control over its employees.

The real advantage of the complicity rule as set out in the Restatement, however, is that it provides for a determination of whether the corporation is actually blameworthy before awarding damages. As Morris, *Punitive Damages in Tort Cases,* has noted:

"Of course, when the master is himself a wrongdoer, and has used his servants in the commission of his wrong, the allowance of punitive damages against him serves the admonitory function, and the fact that he has used his servants is of no particular significance. But, as a general rule, an innocent person is not held liable in punitive damages for the wrong of another, even though he may be required to compensate for such an injury. If the master has not been at fault, he should be within the operation of this general rule, or some reason must be found for making an exception." 44 Harv. L. Rev. at 1200.

Finally, the Restatement rule offers more flexibility than some other forms of the complicity rule. For example, Multi-Media argues a corporation may be held liable for punitive damages only when its officers or directors authorize, ratify or direct the employee's wrongful conduct. See *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 842 (2d Cir. 1967). See also *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 853, 606 P.2d 944 (1980), where it was stated "punitive damages may not be assessed against a principal based on the acts of an agent absent a clear showing that the agent had managerial status or that the principal ordered or ratified the acts in question."

The Restatement rule, however, does not limit the liability of a corporation as severely as Multi-Media would prefer. It allows the factfinder to consider the actions of the corporation or its managerial agents peculiar to the case. For example, here Multi-Media could arguably be liable if it was reckless in the training of its employees regarding safety precautions. The utility of the Restatement rule can also be seen by applying it to the *Wheeler & Wilson* case. There, since the wrongful acts were done by the corporation's general agent the company was properly liable for any punitive damages. In the end the Restatement rule, while not severely limiting corporate liability, does provide

the basis for a fairer result by requiring an examination of the particular facts in each case.

We hereby adopt the complicity rule set out in the Restatement (Second) of Torts § 909 (1977). Although couched in terms of master's and principal's liability for punitive damages arising out of acts of servants and agents, the rules are equally applicable to corporations.

Thus we answer the certified question. A corporation is not liable for punitive damages for an employee's tortious acts committed within the scope of his employment unless (a) the corporation or its managerial agent authorized the doing and manner of the act; (b) the employee was unfit and the corporation or its managerial agent was reckless in employing or retaining him; (c) the employee was employed in a managerial capacity and was acting in the scope of employment; or (d) the corporation or its managerial agent ratified or approved the act of the employee.