**H. WAYNE PALMER & ASSOCIATES, et al., Plaintiffs,**

v.

**HELDOR INDUSTRIES, INC., Defendant.**

**No. 93–2230–JWL.**

United States District Court, D. Kansas.

Nov. 15, 1993.

Curtis L. Tideman, Lathrop & Norquist, Overland Park, KS, for H. Wayne Palmer & Associates.

Bert S. Braud, John W. Kurtz, Thomas J. Conway, The Popham Law Firm, Richard T. Bryant, Richard E. Standridge, Copilevitz, Bryant, Gray & Jennings, Kansas City, MO, for E & J Inc., National Message Center, Inc., Eldon Jansen.

John A. Vering, III, Renana B. Abrams, Roy R. Darke, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Heldor Industries Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

#### I. Introduction

This case involves claims by plaintiffs for damages they allegedly incurred as a result of a fire that started on property leased by defendant. The matter is now before the court on a multitude of dispositive and non-dispositive motions filed by the parties.

A hearing on the parties' motions was held on October 25, 1993. At that hearing, the court made the following rulings on the parties' motions: (1) defendant's motion for summary judgment as to plaintiffs' claims of liability and for punitive damages (Doc. # 29) was denied as to plaintiffs negligence claim with the rest of the issues raised in the motion taken under advisement; (2) defendant's motion to strike witnesses (Doc. # 31) was denied; (3) defendant's motion for partial summary judgment to limit claims of actual damage, asserted by plaintiffs (Doc. # 33) was granted as to reimbursement for costs of lost employees' property, taken under advisement as to damage claims for salaries in the amount of $27, 437.50, and otherwise denied; (4) plaintiff's motion for summary judgment (Doc. # 37) was denied as to the binding effect of defendant's admission of liability and was granted as to defendant's ability to assert comparative fault and as to defendant's affirmative defenses arising out of its bankruptcy situation; (5) plaintiffs' motion to strike defendant's answer to amended petition for damages (Doc. # 39) was denied; (6) defendant's motion to strike and exclude exhibits of plaintiffs (Doc. # 45) was denied; (7) defendant's motion for leave to file its first amended exhibit list (Doc. # 47) was granted; (8) defendant's motion to prevent Jansen defendants from introducing duplicitous and confusing damage evidence (Doc. # 61) was denied [1]; and (9) defendant's motion to exclude replacement cost evidence (Doc. # 63) was denied.

The court is now prepared to rule on those matters taken under advisement at the October 25, 1993 hearing. For the reasons set forth below defendant's motion for summary judgment (Doc. # 29) is granted as to plaintiffs' claim of nuisance and is denied as to plaintiffs' claims of absolute liability, negligence per se and res ipsa loquitur. Defendant's motion is also denied as to plaintiffs' punitive damage claim. Defendant's motion for partial summary judgment to limit claims of actual damage asserted by plaintiffs (Doc. # 33) is granted as to the claimed salary damages of $27,437.50.

---

1. Implicit in the court's denial of this motion is the court's determination that the evidence is *not* duplicitous and confusing, despite the titling of defendant's motion.

## II. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert.*

*denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554.

## III. Discussion

### A. Negligence Per Se

In their amended petition for damages,[2] as part of their negligence claim plaintiffs allege that defendant's failure to follow local, state and federal statutes, rules and regulations governing the storage and maintenance of chemicals caused the fire which resulted in plaintiffs' damages. Defendant contends that to the extent plaintiff's claim can be construed as a negligence per se claim, it should fail.

The distinction between "negligence" and "negligence per se" is the means and the method of ascertainment, in that negligence must be found by the jury by the evidence, while negligence per se results from violation of a specific law or ordinance. *See Cerretti v. Flint Hills Rural Elec. Co-op Ass'n,* 251 Kan. 347, 356, 837 P.2d 330 (1992). In order to establish a negligence per se claim, plaintiffs must prove that (1) the defendant violated a statute, ordinance or regulation; and (2) the violation must be the cause of the damages resulting therefrom. *See Plains Transport of Kansas, Inc. v. King,* 224 Kan. 17, 25, 578 P.2d 1095 (1978); *Noland v. Sears, Roebuck & Co.,* 207 Kan. 72, 74–75, 483 P.2d 1029 (1971). Recently, the Kansas Supreme Court further limited this rule by adding an element requiring the plaintiff to establish that an individual right of action was intended by the legislature when it enacted the subject legislation. *Schlobohm v. United Parcel Service, Inc.,* 248 Kan. 122, 125, 804 P.2d 978 (1991).

The court finds that questions of material fact as to the applicability of relevant fire codes exist which prevent granting defendant's motion at this time. Although defen-

---

**2.** This case was removed to federal court from the Kansas state court and the state practice to use "petition" for the pleading initiating the lawsuit is carried over here. Kansas law, moreover, controls the substantive issues in this diversity case.

dant claims that the "Basic Fire Code" relied on by plaintiffs is not a statute, ordinance or regulation adopted by the City of Overland Park, plaintiffs have presented expert testimony that the code was adopted by the city. However, plaintiffs fail to support this expert testimony by producing the city ordinance that they claim adopted the code.

The court believes that much of the confusion created by this issue arises from plaintiffs' failure to specifically pinpoint the alleged code violation(s) upon which they intend to rely at trial, which creates a corresponding inability by defendant to focus its arguments on those specific provisions. Therefore, in order to allow the court to make an educated ruling regarding the applicability of any negligence per se theory to the present case, plaintiffs must properly request the court to take judicial notice of any ordinances or regulations on which they intend to rely pursuant to K.S.A. § 60–409(c). *See Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 7, 535 P.2d 865 (1975). In forming their request, plaintiffs must specify the exact code provisions upon which they intend to rely at trial, including evidence that those code provisions have been enacted by the City of Overland Park.

In addition to providing information to the court regarding the city's adoption of the various provisions on which they intend to rely, plaintiffs should include the factual basis by which they contend that the code violation was the proximate cause of their damages and a discussion as to why they contend each provision was intended by the legislature to create an individual right of action for injury arising out of the violation. *See Schlobohm v. United Parcel Service, Inc.,* 248 Kan. 122, 804 P.2d 978 (1991). Both plaintiffs and defendant touch on this question in their briefs. Plaintiffs broadly contend that any violation of a fire code provision should be found by the court to create a right of action in their favor, while defendant broadly contends that none of the fire code provisions should create a right of action for plaintiffs. However, the court does not believe the question can be answered by such sweeping generalizations. In fact, the court believes it much more likely that some fire code provisions may create an individual right of action[3] while others may not.[4]

Plaintiffs are ordered to file their request pursuant to K.S.A. § 60–409(c) on or before November 24, 1993 at 12:00 Noon. Defendant shall then have until 12:00 Noon on December 6, 1993 in which to file its response. The court will take up the request at a limine hearing prior to trial.

## B. Res Ipsa Loquitur

■ Defendant next argues that plaintiffs cannot rely on the doctrine of res ipsa loquitur due to their lack of proof concerning the cause of the fire. Defendant contends that because plaintiffs have not set forth specific evidence as to what caused the ignition of the fire, the cause of the fire is subject to mere conjecture and thus the doctrine of res ipsa loquitur cannot be employed.

■ Contrary to defendant's assertions, the court finds that questions of material fact remain preventing a granting of summary judgment on the applicability of the res ipsa loquitur doctrine. The court finds defendant's preoccupation with the cause of ignition of the fire to be misplaced. In order to make the doctrine of res ipsa loquitur applicable, plaintiffs must show, among other things, that their losses occurred only because of negligence on the part of defendant. *See Wehkamp v. City of Garden City,* 187 Kan. 310, 316, 356 P.2d 826 (1960). This is different from defendant's contention that plaintiffs must show that the source of ignition occurred due to defendant's negligence. Plaintiffs have produced evidence of attendant circumstances, including alleged improper storage of dangerous chemicals and code violations, from which it could be inferred that the fire occurred solely due to defendant's negligence.

---

3. A possible example would be a provision requiring a fireproof wall, which arguably could be said to protect immediate neighbors.

4. A possible example would be an alarm system, which arguably could be said to protect the public interest by allowing the fire department to respond faster.

Although the court is denying defendant's motion for summary judgment on the res ipsa loquitur doctrine, this should not be interpreted by the parties as a finding that the doctrine is indeed applicable in this case. The court is mindful of the general reluctance by courts to apply an inference of negligence from the starting of fires for the reason that they are frequent occurrences and in many cases result without negligence on the part of anyone. *See Trent v. Sellers*, 1 Kan.App.2d 267, 563 P.2d 1106 (1977). Our ruling today is merely that plaintiffs have produced sufficient attendant circumstances to prevent entry of summary judgment at this time. Whether a theory of recovery based on the doctrine of res ipsa loquitur should be submitted to the jury will have to be determined at trial.

### C. Absolute Liability

■ Defendant next contends that it is entitled to summary judgment on plaintiffs' absolute liability claim. In their petition, plaintiffs assert a claim against defendant for "absolute liability for carrying on an inherently dangerous activity which led to a fire causing damage to plaintiffs." In order for absolute liability to apply, it will be necessary for plaintiffs to show that the chemicals stored in defendant's warehouse were "inherently dangerous" or that the act of storing these chemicals was an "inherently dangerous activity." The relevant considerations for determining if an instrumentality is inherently dangerous are set forth in *Falls v. Scott*, 249 Kan. 54, 815 P.2d 1104 (1991):

"To be inherently dangerous, a commodity or condition must be so imminently dangerous in kind as to imperil the life or limb of any person who uses it, or, burdened with a latent danger or dangers that derive from the very nature of the commodity or condition itself and not from any defect in the thing. 'Inherently dangerous' has also been said to mean a type of danger inhering in an instrumentality or condition itself at all times, requiring special precautions to be taken to prevent injury, and not a danger arising from mere casual or collateral negligence of others under particular circumstances. Instrumentalities or substances which, by their very nature are calculated to do injury are considered to be dangerous per se. An instrumentality is dangerous per se if it may inflict injury without the immediate application of human aid." 57A Am.Jur. 2d, Negligence § 324.

Generally, instrumentalities or substances which by their very nature are calculated to do injury are considered to be dangerous per se. Among the things which have been characterized as being dangerous instrumentalities are: poisons; explosives and explosive devices; firearms, particularly if they are loaded; explosive substances; grinding wheels which contain a latent defect causing them to explode or disintegrate upon ordinary use; dry ice; bottles of beverages under pressure or containing any ingredient which would cause them to explode upon ordinary handling; and, in some cases, airplanes.

*Falls*, 249 Kan. at 58, 815 P.2d 1104.

Kansas has adopted the Restatement (Second) of Torts § 519, which sets forth the general rule regarding strict liability in tort for abnormally dangerous activities as follows:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

Kansas has also adopted Section 520 of the Restatement (Second) of torts which sets out the following test for determining whether an activity is abnormally dangerous:

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

*See Falls,* 249 Kan. at 60, 815 P.2d 1104; *Williams v. Amoco Production Co.,* 241 Kan. 102, 115, 734 P.2d 1113 (1987).

The court finds that questions of material fact preclude the granting of summary judgment in favor of defendant on plaintiffs' absolute liability claim. Quite simply, defendant has failed to properly support its motion for summary judgment by producing any factual basis for the court to determine that the chemicals stored by defendant should not be classified as inherently dangerous. In its motion, defendant simply makes a generalized statement that "swimming pool chemicals are not dangerous instrumentalities, and the practice of storing them does not, as a matter of law, constitute an abnormally dangerous activity that would give rise to absolute liability as alleged by plaintiffs." Simply stating the chemicals are not inherently dangerous does not make it so. Defendant's motion is completely devoid of any factual record regarding the safety of the chemicals. In contrast, plaintiffs' response, while skimpy on facts, does point to deposition testimony that Class 3 oxidizers stored by defendant were "hazardous materials."

Whether the chemicals stored in defendant's warehouse were "inherently dangerous" and whether the actual storage of the chemicals was an "inherently dangerous activity" are questions of law that must be determined by the court. However, because defendant's summary judgment motion is devoid of any factual discussion regarding the safety of the chemicals, the court finds that questions of material fact remain that preclude the granting of summary judgment.

### D. Nuisance

■■■ Defendant next contends that it is entitled to summary judgment on plaintiffs' nuisance claim due to plaintiffs' failure to satisfy the durational requirement for bringing a nuisance action. The court concurs with defendant's contention and therefore will grant summary judgment in favor of the defendant on plaintiffs' nuisance claim.

■■■ Kansas law is clear that one of the requisites of a nuisance is that it has been in existence for some period of time rather than being an isolated occurrence of a temporary nature. *See Culwell v. Abbott Const. Co., Inc.,* 211 Kan. 359, 366, 506 P.2d 1191 (1973). In this case, plaintiffs allege that the fire at defendant's warehouse was the occurrence giving rise to their nuisance claim. There is no evidence that defendant's business of storing pool chemicals obstructed the reasonable and comfortable use of plaintiffs' property in any manner prior to the outbreak of the fire. The fire that occurred on defendant's premises was an isolated incident. Plaintiffs argue that the nuisance was of significant duration because plaintiffs were forced to find new and temporary places of business after the occurrence of the fire. The court finds this argument to be misplaced. Any difficulties experienced by plaintiffs after the fire were not due to any continuing nuisance-type activity by defendant, but rather were due to the fire itself, which was a one-time isolated incident. Because the harm suffered by plaintiffs in this case fails to meet the durational requirements for a nuisance claim, summary judgment as to that claim is granted.

### E. Punitive Damages

Defendant next contends that it is entitled to summary judgment on plaintiffs' punitive damages claim. Defendant takes essentially two positions with respect to plaintiffs' punitive damages claim. First, defendant argues that the evidence, as a matter of law, mandates a finding that defendant did not act in a wanton manner. Second, defendant argues that even if plaintiffs had evidence of wanton conduct, punitive damages still would not be recoverable because there is no evidence that wanton conduct was authorized or ratified by anyone expressly empowered to do so as required by K.S.A. § 60–3702(d).[5]

---

**5.** The court notes that it deems the Kansas punitive damages scheme to be substantive in nature

 Punitive damages may be imposed under Kansas law if a plaintiff shows by clear and convincing evidence that "the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice." K.S.A. 60–3702(c). Wantonness refers to the mental attitude of a wrongdoer rather than a particular act of negligence. *Gould v. Taco Bell,* 239 Kan. 564, 572, 722 P.2d 511 (1986). A plaintiff is not required to show intentional wrongdoing to establish that a defendant's conduct was "wanton." In order for a negligent act to constitute wantonness, so as to sustain recovery of punitive damages, the actor must be deemed to have realized the imminence of injury to others from acts or omissions and to have refrained from taking steps to prevent injury because of indifference as to whether such injury occurred. *Atkinson v. Orkin Exterminating Co., Inc.,* 5 Kan.App.2d 739, 746, 625 P.2d 505 (1981).

 Plaintiffs contend they are entitled to punitive damages because defendant recklessly ignored the dangerous propensities of chemicals it was storing, stored dangerous hypochlorates outside a protective vault, violated several provisions of the Basic Fire Code in their handling of stored chemicals, and made business decisions predicated on its economic interests which resulted in improper training of individuals responsible for the storing of chemicals and a lack of personnel to store the chemicals in a safe manner. Defendant, on the other hand, contends that it provided its personnel with safety training regarding proper and safe storage of pool chemicals, that the chemicals were stored in a proper and safe manner, that no applicable ordinances or fire codes were violated, and that it would not have been possible for defendant to foresee any substantial likelihood that any harm would arise as a result of its conduct.

As to the wantonness issue, the court finds it is faced with disputed material facts which preclude summary judgment. If plaintiffs' version of the facts were to be believed,

and, thus, it follows that K.S.A. § 60–3702 applies in diversity cases in Kansas. *See Deere & Company v. Zahm,* 837 F.Supp. 346, (D.Kan. 1993); *Whittenberg v. L.J. Holding Co.,* 830 F.Supp. 557, 565 n. 9 (D.Kan.1993); *Ruiz v.*

defendant haphazardly stored highly dangerous chemicals in violation of various fire codes in such a manner that it must have realized the imminence of injury to others and recklessly disregarded it. If defendant's version of the facts were to be believed, defendant stored relatively safe chemicals in a proper manner and any type of harm arising from its conduct would be highly unforeseeable. The issues of material fact make summary judgment on the wantonness issue inappropriate at this time.

 Defendant's argument that plaintiffs cannot recover punitive damages because the questioned conduct was not authorized or ratified by a person expressly empowered to do so, as required by K.S.A. § 60–3702(d), creates a much more difficult question. The statue provides that:

> (d) In no case shall exemplary or punitive damages be assessed pursuant to this section against:
>
> (1) A principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer ...

K.S.A. § 60–3072(d).

 Defendant argues that plaintiffs' punitive damage claim should fail because no employee of defendant "was ever empowered or authorized by [defendant] to engage in any wanton conduct or to act or refuse to act with the realization of the imminence of any danger or with a reckless disregard or complete indifference to the probable consequences of its actions or inactions to create any risk of fire or explosion on the premises of [defendant]." Defendant seems to imply that in order to impose punitive damages on a corporation for the acts of one of its employees, K.S.A. 60–3702(d) requires explicit authorization from the corporation to its employee to engage in specific wanton actions. The court does not believe this is the proper interpretation of the statute, since it would

*Quiktrip Corp.,* 826 F.Supp. 1284, 1285 n. 1 (D.Kan.1993) (citing *Metal Trading Services of Colorado, Inc. v. Trans–World Services, Inc.,* 781 F.Supp. 1539, 1544 (D.Kan.1991)).

be the rare corporation indeed that would explicitly authorize its employees to engage in wanton acts. A statute is presumed not to have been intended to produce absurd consequences. *Mendenhall v. Roberts,* 17 Kan. App.2d 34, 42, 831 P.2d 568 (1992).

Having rejected defendant's proffered interpretation of K.S.A. § 60–3702(d), the court is left with the question of how the section should properly be interpreted. The court has found no published opinions on the issue and it appears to be one of first impression.

Prior to the enactment of K.S.A. § 60–3702(d), the law regarding corporate liability for punitive damages arising from the conduct of employees was clear. The Kansas Supreme Court in *Kline v. Multi–Media Cablevision, Inc.,* 233 Kan. 988, 666 P.2d 711 (1983), in response to a certified question from the United States District Court for the District of Kansas, held that corporations may be held liable for punitive damages arising from the conduct of their employees if "(a) the corporation or its managerial agent authorized the doing and manner of the act; (b) the employee was unfit and the managerial agent of the corporation was reckless in employing and retaining him; (c) the employee was employed in a managerial capacity and was acting in the scope of employment; or (d) the corporation or managerial agent ratified or approved the act of the employee." *Id.* at 994, 666 P.2d 711; *see also Fogarty v. Campbell 66 Exp., Inc.,* 640 F.Supp. 953, 965–66 (D.Kan.1986). The Kansas rule set forth in *Kline* was an adoption of the complicity rule set out in the Restatement (Second) of Torts § 909 (1977).

With the enactment of K.S.A. § 60–3702(d), the standard necessary to find corporate liability for punitive damages arising from the conduct of employees becomes murky. This court can find no evidence from the specific language used in the section, nor from any legislative history, to indicate that the legislature intended to codify the existing law. In fact, no legislative history seems to exist which would aid the court in determining the legislature's intent when enacting section 60–3702(d). It is therefore incumbent on this court to interpret the meaning of the section from its plain language. ·

Statutory interpretation is a question of law for· the court to resolve. *Martindale v. Robert T. Tenny, M.D., P.A.,* 250 Kan. 621, 829 P.2d 561 (1992). When called upon to interpret a statute, the court must first examine the statutory language itself. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). A statute should not be given a construction that leads to uncertainty, injustice, or confusion if it is possible to construe it otherwise. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 971 (1990). A construction of a statute should be avoided which would render the application of the statute impractical or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act. *In re Adoption of Baby Boy L.,* 231 Kan. 199, Syl. ¶ 8, 643 P.2d 168 (1982). A statute subject to interpretation is presumed not to have been intended to produce absurd consequences, but to have the most reasonable operation that its language permits. If possible, doubtful provisions should be given reasonable, rational, sensible, and intelligent constructions. *Id.*· at 209, 643 P.2d 168; *In re Gantz,* 10 Kan.App.2d 299, 301, 698 P.2d 385 (1985).

With these rules of statutory construction in mind, we now turn to interpretation of the statute at issue here. K.S.A. § 60–3702(d) provides that punitive·damages shall not be assessed against an employer unless the questioned conduct was authorized or ratified by a person "expressly empowered" to do so on behalf of the employer. The question for this court thus becomes how the term "expressly empowered" must be interpreted.

The manner in which powers may be conferred on corporate officers and agents is discussed in *Fletcher Cyclopedia Corporations. Fletcher* notes that express powers may be directly conferred upon corporate·officers or .agents by express provisions of the charter, or bylaws, or resolutions or acts of the board of directors; or their contract with the corporation.· *Fletcher Cyc Corp* § 439 (Perm Ed). *Fletcher* then notes that the conferring of express powers neces-

sarily creates incidental powers, stating "[i]t is a fundamental principle in the law of agency that every delegation of authority, whether general or special, carries with it, unless the contrary be expressed, *implied authority* to do all of those acts, naturally and ordinarily done in such cases, which are reasonably necessary and proper to be done in order to carry into effect the main authority conferred." *Id.* at § 440 (emphasis added).

The court finds that the only way to give effect to the "expressly empowered" language contained in section 60–3702(d) is to conclude that the questioned conduct must be authorized or ratified by a person who has been given express powers by the corporation, either through express provisions of the charter, or bylaws, or resolutions or acts of the board of directors, or through that person's contract of employment, to authorize or ratify the conduct in question. A more relaxed standard, such as finding that a person was empowered to authorize or ratify the employee's actions because that person's position necessarily included incidental powers to authorize or ratify the actions because such actions were necessarily and normally done, would be relying on that person's implied powers and would read the term "expressly empowered" out of the statute. Such an interpretation would be at odds with established rules of statutory construction. *See Mendenhall v. Roberts,* 17 Kan.App.2d 34, 42, 831 P.2d 568 (1992). The court is aware that its interpretation creates a much stricter standard for finding corporate liability for punitive damages arising from the conduct of employees than existed under *Kline* prior to the enactment of K.S.A. § 60–3702(d). However, the court believes such a result is dictated under the plain meaning of the statutory language.

In order for corporate liability for punitive damages to apply to the defendant in the present case, it will be necessary for plaintiffs to show that a person in the employ of defendant had express authority to authorize and/or ratify the employee conduct which plaintiffs contend caused their damages and that such person in fact authorized or ratified the conduct. Such authority must be express, and not merely implied from his or her position.[6]

The court finds that defendant has failed to satisfy its summary judgment burden on the punitive damages issue, and therefore defendant's summary judgment motion will be denied. Defendant has the burden of demonstrating the absence of material facts surrounding plaintiffs' punitive damages claim, which defendant could properly meet by showing an absence of evidence to support plaintiffs' case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. Defendant has shown a lack of evidence that any person employed by defendant was empowered to authorize or ratify wanton or reckless conduct. However, under K.S.A. § 60–3702(d) the person need not have been expressly empowered to authorize or ratify wanton conduct, as defendant suggests, but must have been expressly empowered to regulate or control the questioned conduct. The record before the court is bare as to any evidence (or lack thereof) regarding the express powers conferred on any of defendant's managerial employees to control or regulate the storage of chemicals at the warehouse. Due to the lack of a factual record on this question, defendant's motion for summary judgment is denied as to the punitive damages issue. This question may surface again at trial, of course, on a motion for judgment as a matter of law under Fed. R.Civ.P. 50.

6. Although the standard created under K.S.A. § 60–3702(d) is restrictive, the court does not believe it is an impossible hurdle for plaintiffs. For example, in the present case plaintiff contends that warehouse employees improperly stored chemicals and that the manager in charge of storage operations ratified and/or authorized such improper storage. If plaintiff can show that the manager of the warehouse was given express powers to regulate the storage of chemicals at the warehouse, such a granting of express authority may be sufficient for corporate liability

if the manager in fact ratified or authorized actions relating to the storage of chemicals which gave rise to a realization of imminent danger and a reckless disregard thereof. Ratification of the actions need not itself be express. Ratification may occur in instances where an individual is aware of certain actions and it is shown the individual approved of such actions or remained silent. *See Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984); *Mattingly, Inc. v. Beatrice Foods Co.,* 835 F.2d 1547 (10th Cir.1987).

### F. "Salaries"

The final issue which the court took under advisement at the October 25, 1993 hearing was defendant's contention that plaintiff National Message Center's claimed damages for "salaries" totalling $27,437.50 should be stricken. The amount arises from time spent valuing National Message Center's lost inventory by Eldon Jansen (at $50 per hour), Barbara Jansen (at $12.50 per hour) and Harold Schonhoeft (at $50.00 per hour). These amounts are not evidenced by any time cards or diary, have not been billed to National Message Center, nor have they been paid by National Message Center. Because there has been no allegation of any legal liability on the part of National Message Center to pay these expenses, the court finds that National Message Center is not entitled to recover such amounts as damages. *See* 22A Am.Jur.2d Damages § 592, p. 657. Accordingly, the damage claim shall be stricken.

### III. Conclusion

For the reasons discussed, then, the parties' motions have been granted in part and denied in part. The case is set as the #2 case for trial on the December trial calendar. The clerk published that calendar on November 12, 1993, with information by which the parties may monitor the progress of the case set ahead of this one so that the trial may commence immediately upon termination of the #1 case.

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendant's motion for summary judgment as to plaintiffs' claims of liability and for punitive damages (Doc. #29) is granted in part and denied in part. The motion is granted as to plaintiffs' nuisance claim and is otherwise denied.

**IT IS FURTHER ORDERED THAT** defendant's motion to strike witnesses (Doc. #31) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion for partial summary judgment to limit claims of actual damage asserted by plaintiffs (Doc. #33) is granted as to the damage claims for reimbursement for costs of lost employees' property and is also granted as to the claims for "salaries" of Eldon Jansen, Barbara Jansen and Harold Schonhoeft in the amount of $27,437.50. The motion is otherwise denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' motion for summary judgement is denied as to the binding effect of defendant's admission of liability and is granted as to defendant's ability to assert comparative fault and as to defendant's affirmative defenses arising out of its bankruptcy situation.

**IT IS FURTHER ORDERED THAT** plaintiffs' motion to strike defendant's answer to amended petition for damages (Doc. #39) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion to strike and exclude exhibits of plaintiffs (Doc. #45) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion for leave to file its first amended exhibit list (Doc. #47) is granted.

**IT IS FURTHER ORDERED THAT** defendant's motion to prevent Jansen defendants from introducing duplicitous and confusing damage evidence (Doc. #61) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion to exclude replacement cost evidence (Doc. #63) is denied.

**IT IS SO ORDERED.**