**Heather PRESTON, Plaintiff,**

v.

**INCOME PRODUCING MANAGEMENT, INC., Defendant.**

No. 93–1184–PFK.

United States District Court,
D. Kansas.

Dec. 13, 1994.

Kathryn Gardner of Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for plaintiff.

Arthur S. Chalmers of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for defendant.

*MEMORANDUM AND ORDER*

PATRICK F. KELLY, Chief Judge.

On November 7, 1994, the court took up a hearing on defendant Income Producing Management, Inc.'s renewal of its Fed. R.Civ.P. 50(b) motion for judgment after trial. After hearing Income Producing Man-

agement, Inc. (IPM) and plaintiff Heather Preston's arguments, the court extended comments and announced its decision to deny IPM's motion. The court now enters this memorandum and order in accordance with its in-court decision.

Preston brought this action under Title VII and it was tried to a jury. Although Preston's responsive brief fully and correctly recites the basis of her claim and the evidence in connection therewith, the court will briefly summarize the facts here. Heather Preston, then 19 years of age, claimed that in the course of her employment at IPM's place of business, Wendy's Old Fashioned Hamburgers, she was subjected to a hostile work environment. This environment was created by co-employees' conduct which included propositioning her for sex, and repeated offensive and unwanted touching. During her employment, Preston complained to David Poland, the store co-manager, and he elected to do nothing. Indeed, Preston alleged that Poland's own offensive conduct contributed to the environment that gave rise to her claims.

Poland's role as a store co-manager was addressed in the evidence at trial, and as a consequence, without objection, Instruction No. 14 was given. That instruction stated as follows:

An individual qualifies as an employer under Title VII if he serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment. In that situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the conduct.

The jury found IPM discriminated against Preston, but that she was not constructively discharged. The jury awarded compensatory damages in the amount of $8,000.00. IPM's motion does not challenge the compensatory damage award, but concedes that sufficient evidence was adduced to support such a verdict. Defendant's candor is welcomed, as it is entirely correct.

The jury was further instructed on the issue of punitive damages (Instr. No. 16).

Ironically, the court adopted the defendant's proposed instruction for this purpose and same was submitted without objection. The jury found that Preston was entitled to punitive damages (Verdict, No. 4) and assessed same in the amount of $25,000.00 (Verdict, No. 5). IPM's motion does not challenge the reasonableness of the award. For reasons noted below, the court concludes there was ample evidence to support a jury issue as to punitive damages, and the jury's award is fair and reasonable. It is clear to the court that the jury's assessment suggests that it had a good appreciation of all the evidence; it was not a product of passion. The jury ruled out some of the events claimed by plaintiff and accepted others. Furthermore, the jury's verdict appears to be tempered, fair and just.

To the court's surprise, IPM's motion now raises the issue of whether the jury's findings that IPM is liable for punitive damages is legally sufficient. To reach this argument, it would seem IPM presupposes error at the hands of the trial court in submitting the issue of punitive damages. Apparently, IPM is suggesting the trial court should have raised this issue, *sua sponte*, because it was never raised or suggested by IPM during trial. It has never been this court's practice, however, to intervene in a trial counsel's role. This court heard not one word from defense counsel on this issue. Other matters were raised and taken under advisement, but the court never contemplated that the issue now raised was one of them. The court can say now, that even if defense counsel had raised the issue then, it would have remained under advisement, and given the full thrust of the evidence, would have been overruled if raised in a motion for new trial.

Rule 50(b) provides in part:

Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to

stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law.

Judgment as a matter of law (formerly a judgment notwithstanding the verdict) "should only be granted where the evidence is such that a reasonable jury could only reach one conclusion." *Danner v. Int'l Medical Marketing, Inc.*, 944 F.2d 791, 793 (10th Cir.1991) (citing *Brown v. McGraw–Edison Co.*, 736 F.2d 609, 612–13 (10th Cir.1984)). The court must view the evidence "in the light most favorable to the party against whom the motion for judgment as a matter of law is sought and if, on the basis of the evidence and inferences to be drawn therefrom, reasonable and fair-minded persons might form different conclusions as to the facts in issue, the granting of a judgment as a matter of law is improper." *Powell v. Havner*, 817 F.Supp. 90, 92 (D.Kan.1993).

Preston argues IPM cannot raise this issue now because, as IPM admits, it did not specifically raise the issue of sufficiency of the evidence to support punitive damages in its motions for directed verdict. In response, IPM cites *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500 (10th Cir.1991), *cert. denied*, 502 U.S. 940, 112 S.Ct. 375, 116 L.Ed.2d 327 (1991). There, the Tenth Circuit stated the requirements of Rule 50 should not be viewed narrowly and that "technical precision is unnecessary." 933 F.2d at 1503. The court finds IPM has pushed the rule of law announced in *Anderson* to its limits, but will address IPM's Rule 50 motion on its merits.

Preston's cause of action is governed by the Civil Rights Act of 1991 which permits the award of punitive damages in a Title VII case. The Act provides in part:

A complaining party may recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1).

▪ IPM argues the court should apply the complicity rule to determine whether it legally can be held liable for punitive damages under § 1981a(b)(1). The complicity rule provides:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal or a managerial agent authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal or a managerial agent was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Torts § 909 (1977); *see also*, Restatement (Second) of Agency § 217C (1957).

IPM contends the complicity rule is appropriate because of the reliance upon agency principles announced in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), in which the Court stated:

We therefore decline the parties' invitation to issue a definitive rule on employer liability, but we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress' decision to define "employer" to include any "agent" of an employer, 42 U.S.C. § 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. *See generally* Restatement (Second) of Agency §§ 219–237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. *Ibid.*

Thus, IPM stresses that the jury's award of punitive damages must be based on more than the doctrine of *respondeat superior.*

IPM also cites *Kline v. Multi–Media Cablevision, Inc.,* 233 Kan. 988, 666 P.2d 711 (1983), for support. There, this court certified the following question to the Kansas Supreme Court:

> "Under Kansas law, may a corporation be held liable for punitive damages arising from an act of an agent or employee, within the scope of the agent's or employee's employment, when the corporation, through its board of directors or an officer, has neither directed, authorized nor ratified the act?"

233 Kan. at 989, 666 P.2d 711. In reaching its answer to that question, the court stated: "We hereby adopt the complicity rule set out in the Restatement (Second) of Torts § 909 (1977). Although couched in terms of master's and principal's liability for punitive damages arising out of acts of servants and agents, the rules are equally applicable to corporations." 233 Kan. at 994, 666 P.2d 711. It should be noted that some of the legal principles adopted in *Kline* were superseded by the enactment of K.S.A. § 60–3701(d) (Supp.1993). That statutory provision limits employer liability for punitive damages to Restatement (Second) of Torts § 909(a) (authorized acts) and § 909(d) (ratified acts). *Smith v. Printup,* 254 Kan. 315, 336–37, 866 P.2d 985 (1993).

Following the Court's announcement in *Vinson, supra,* that the issue of employer liability should be determined by looking to agency principles, the Tenth Circuit, in *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1417 (10th Cir.1987), turned to the Restatement (Second) of Agency § 219 (1958). The court found helpful § 219(2), which states:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> (a) the master intended the conduct or the consequences, or
>
> (b) the master was negligent or reckless, or
>
> (c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

The court held the defendant's claim that the company lacked notice was not an absolute defense. 833 F.2d at 1418.

In *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572 (10th Cir.1990), the Tenth Circuit addressed employer liability in a suit involving hostile work environment sexual harassment. The court relied upon the agency principles set out in *Hicks* and Restatement (Second) of Agency § 219(2) and found there were three potential bases for liability. They were: (1) if the agent acted within the scope of employment; (2) if the employer was negligent or reckless in failing to respond to hostile work environment sexual harassment by employees; and (3) if the agency relationship aided the harasser. 916 F.2d at 576–79. In order to determine if liability existed because the agency relationship aided the harasser, the court considered whether the harasser had supervisory authority to hire or fire the plaintiff, and whether the harasser had the authority to determine plaintiff's work assignments. 916 F.2d at 579 n. 7.

More recently, in *Sauers v. Salt Lake County,* 1 F.3d 1122 (10th Cir.1993), the Tenth Circuit again addressed the issue of employer liability in a sexual harassment suit. The court stated:

> The [employer] may be liable without necessarily knowing of [the harasser's] actions. "The term 'employer' means a person engaged in an industry affecting commerce ... and any agent of such a person." 42 U.S.C. § 2000e(b). Unfortunately, "[n]owhere in Title VII is the term 'agent' defined." *Barger v. Kansas,* 630 F.Supp. 88, 89 (D.Kan.1985). We agree with the Fourth Circuit that "[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *aff'd in pertinent part,* 900 F.2d 27 (4th

Cir.1990 (*en banc*). In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct. *See* 29 C.F.R. § 1604.11(c).

1 F.3d at 1125 (footnote omitted).

 When Preston rested, IPM's counsel should have known that this court was aware of the Supreme Court's ruling in *Meritor Savings Bank v. Vinson, supra,* particularly as it pertained to Poland's role as the employer. The court also had at hand *Sauers v. Salt Lake County, supra,* which suggests that conduct such as was manifested by Poland, as the company's alter ego, satisfies the issue of liability running to the defendant company. The reason for the court's decision to deny IPM's motion is quite simple. The evidence is clear that at pertinent times Poland had authority to hire and fire store employees. He did not need to seek other approval. Poland had the further responsibility of disciplining and/or counseling employees on areas of discriminatory practice. He, in the face of notice and complaint, did neither. To put the problem in perspective, we were dealing with a store co-manager who, along with others, frequently teased plaintiff about her large breasts. He regularly addressed the young male employees as "hard dicks." This and other evidence relating to Poland's conduct convinces the court that the jury verdict is entirely understandable. To say now that IPM somehow is immune from punitive damages for the acts of Poland while co-manager is nonsense. Further discussion on the subject is unnecessary.

It should be sufficient here to say that the price paid by a defendant for its conduct as an employer, through its store managers, is punitive damages. One lesson learned is that when and if a defendant, for whatever reason, imposes managerial responsibility on an untrained and undisciplined misfit such as Poland, it puts at risk the very result found by the jury in its verdict. Another lesson which needs to be learned is that it is time for the president of the defendant company to see that such a circumstance does not reoccur.

IT IS ACCORDINGLY ORDERED this 13th day of December, 1994, that defendant's motion for judgment after trial (Dkt. No. 70) is denied.