**Michael G. OLESON, Plaintiff,**

v.

**KMART CORPORATION, Martha Engnehl, Defendants.**

No. 96–4066–SAC.

United States District Court,
D. Kansas,
Topeka Division.

March 31, 1999.

Matthew D. All, Andrew R. Ramirez, Scott J. Bloch, Stevens & Brand, L.L.P., Lawrence, KS, for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

On April 26, 1996, Michael G. Oleson commenced this action against his former employer, the KMart Corporation. On June 19, 1996, Oleson filed an amended complaint. In his fourteen page amended complaint, Oleson asserts six separate claims against KMart. Oleson alleges violations of the Family Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Workers' Compensation Laws of the State of Kansas, retaliatory discharge, intentional infliction of emotional distress and negligent infliction of emotional distress.

Oleson essentially alleges that his supervisor at the KMart distribution center ordered him to work or be fired, despite the fact that the company physician had given him written instructions that he should not work for three days due to bronchitic asthma. Fearing the loss of his job, Oleson went to work in spite of his illness. Although he was visibly ill, no supervisor would allow Oleson to leave as he had already exhausted his annual bank of personal leave of 180 hours. Weak from his illness, Oleson passed out, injuring his back. Oleson saw a chiropractor the next day for the injury to his back. Oleson's back was treated. The chiropractor gave Oleson a pass to be off work indefinitely for his work related injury as well as his ongoing bronchitic asthma. KMart did not honor Oleson's requests for additional leave and as a result of his absence, KMart terminated his employment.

According to Oleson, KMart then embarked on a criminal conspiracy to deny his workers' compensation claim. Specifically, Oleson alleges that KMart "intentionally set out to defeat plaintiff's right to workers' compensation benefits and rights by intimidating witnesses, ignoring evidence, conspiring to create negative evidence, and conspiring to accuse plaintiff of falsifying a workers compensation claim." Ultimately, Oleson prevailed in his workers' compensation claim against KMart. Oleson's complaint alleges that "the workers compensation judge instructed the attorney general of the State of Kansas to institute an investigation of the fraudulent practices of defendant and intimidation."

KMart denies all of Oleson's allegations of unlawful activity.

On December 5, 1996, this court entered a memorandum and order denying in part and granting part KMart's motions to dismiss. *See Oleson v. KMart Corp.*, No. 96–4066–SAC, 1996 WL 772604 (D.Kan. Dec. 5, 1996). Oleson was allowed fifteen days to file an amended complaint concerning his negligent infliction of emotional distress.[1] On December 19, 1996, Oleson filed his second amended complaint. *See* (Dk. 87). On January 31, 1997, Oleson filed his third amended complaint. *See* (Dk. 173). As it now stands, the plaintiff asserts claims under the following theories: FMLA (Family and Medical Leave Act), ADA (American's with Disabilities), violations of the Kansas Workers Compensation Act (Conspiracy, Fraud, Witness intimidation), Retaliatory discharge (for filing for worker's compensation), Tort of Outrage and ERISA.

It is apparent that throughout this case the parties—or at least their counsel—have not gotten along very well. In fact, the court file has mushroomed, now containing over 368 separate pleadings. From the court's review of the file, the virtual absence of any spirit of cooperation has been one of the primary sources of this proliferation. After viewing the proliferation of motions, and not knowing what interrelationship, if any, existed between the pending motions, the court

---

**1.** The plaintiff has since abandoned his negligent infliction of emotional distress claim. *See* (Dk. 201 at page 34)

has waited for a significant block of time in its calender to sort through the mass of pleadings and to decide the majority of the pending motions in one single, consolidated order.

### Motions filed by the Plaintiff:

1. Plaintiff's Motion for review of Magistrate's decision regarding plaintiff's motion to take video tape deposition of Sandra Helton. (Dk. 124).[2]

2. Plaintiff's Motion to plead greater damages, for jury to determine punitive damages or for an advisory jury on punitive damages, and for order to lift cap on punitive damages. (Dk. 156).

3. Plaintiff's motion in limine. (Dk. 164).

4. Plaintiff's motion for leave to file out of time reply to defendant's response to plaintiff's motion to add prayer for higher damages. (Dk. 227).[3]

5. Plaintiff's motion for leave to permit filing of deposition transcripts in opposition to defendant's motion to dismiss or for summary judgment. (Dk. 239).

6. Plaintiff's motion to strike [defendants' memorandum and reply to plaintiff's response to defendants' motion to dismiss, or in the alternative, motion for partial summary judgment], or in the alternative, for leave to file a surreply. (Dk. 245).

7. Motion to strike defendant's latest motion for summary judgment and to stay plaintiff's obligation to respond to defendant's motion for summary judgment pending court's ruling on motion to strike. (Dk. 256).

8. Motion to strike defendant's reply memorandum on the second motion for summary judgment (Dk. 262).

### Motions filed by defendants:

1. Motion to Dismiss or in the alternative for partial summary judgment. (Dk. 122).

2. Defendant's objection to order of Magistrate (Dk. 185).

3. Motion to Dismiss or in the alternative for partial summary judgment. (Dk. 198).

4. Motion to Strike plaintiff's reply to defendant KMart's response to motion to add prayer for higher damages, for jury to determine punitive damages, for advisory verdict and to lift the cap. (Dk. 221).[4]

5. Motion for order to substitute defendant KMart's amended memorandum in reply to plaintiffs response to defendant's motion to dismiss, or, in the alternative, motion for partial summary judgment. (Dk. 226).

6. Motion by defendants for summary judgment. (Dk. 240).

7. Motion for leave to file memoranda supporting summary judgment and reply memoranda in excess of page limitations. (Dk. 266).

8. Motion for leave to file an amended memorandum in support of motion for summary judgment. (Dk. 280).

9. Motion for review of Magistrate's memorandum and . order (Dk. 356). (Dk. 357).

10. Motion for review of Magistrate's memorandum and order (Dk. 359). (Dk. 360).

### Dispositive Motions and Related Motions

Motion to Dismiss or in the alternative for partial summary judgment (Dk. 122); Motion to Dismiss or in the alternative for partial summary judgment (Dk. 198); Motion by Defendants for summary judgment (Dk. 240).

As indicated above, the plaintiff seeks to recover from defendant under six alternative theories: FMLA, ADA, violations of the Kansas Workers Compensation Act (Conspiracy, Fraud, Witness intimidation), retaliatory

---

**2.** By letter dated January 19, 1999, the plaintiff withdraws this motion.

**3.** The plaintiff's motion to file a reply to the defendant's response to plaintiff's motion to add prayer for higher damages (Dk. 227) is granted.

**4.** In light of the court's ruling granting the plaintiff's motion to file a reply to the defendant's response to plaintiff's motion to add prayer for higher damages (Dk. 227), the defendant's motion to strike plaintiff's reply to defendant's response to motion to add prayer for higher damages, for jury to determine punitive damages, for advisory verdict and to lift the cap (Dk. 221) is denied.

discharge (for filing for worker's compensation), tort of outrage and ERISA. The defendants have filed three separate dispositive motions in the hope of defeating some or all of the plaintiff's claims.

The defendants' dispositive motions are problematic for several reasons. First, the defendants' motions to dismiss are in reality motions for summary judgment as virtually all of the motions require the court to look beyond the pleadings in order to decide the issues presented. Yet, the defendants' statement of uncontroverted facts generally makes its first appearance in the defendants' reply brief. This is improper as it does not give the non-moving plaintiff the opportunity to respond to the defendants' statement of facts. Moreover, this manner of briefing imposes an undue burden on the court's efforts to analyze the legal issues presented against their factual backdrop. Second, and equally important, this piecemeal filing of dispositive motions is little more than a sophomoric attempt to circumvent the reasonable page limitations imposed by this court. Recognizing that the defendant's briefing practice constituted a violation of this court's procedural guidelines, the plaintiff did not file a response to the defendants' third dispositive motion.

This court fully recognizes both the benefits and burdens imposed by the filing, defending and disposing of pretrial dispositive motions. While requiring parties to expend time, energy and resources in preparing and defending dispositive motions, meritorious dispositive motions eliminate meritless claims or defenses, narrowing the triable factual and legal issues. *Cf. Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("More than a 'disfavored procedural' shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1.").

Viewed in their entirety, the "Federal Rules of Civil Procedure are designed to promote the twin goals of judicial economy and fairness to litigants ..." *Daingerfield Island Protective Society v. Babbitt,* 40 F.3d 442, 449 (D.C.Cir.1994). Having reviewed the defendants' briefs and the plaintiff's re-

sponses, the court concludes that neither of these laudable goals would be achieved if it invested any more of its scarce resources into sifting through the mass of pending dispositive motions. Nor does the court countenance the defendants' attempt to circumvent this court's page limitations. Expressing no opinion on the merits of the defendants' arguments, the court denies the following motions filed by the defendants: Motion to Dismiss or in the alternative for partial summary judgment (Dk. 122); Motion to Dismiss or in the alternative for partial summary judgment (Dk. 198); Motion by Defendants for summary judgment (Dk. 240).

> The following motions are also denied:

> Motion for order to substitute defendant KMart's amended memorandum in reply to plaintiffs response to defendant's motion to dismiss, or, in the alternative, motion for partial summary judgment (Dk. 226).

> Motion for leave to file memoranda supporting summary judgment and reply memoranda in excess of page limitations. (Dk. 266).

> Motion for leave to file an amended memorandum in support of motion for summary judgment. (Dk. 280).

In light of the court's decision to deny the defendant(s)' dispositive motions, the following motions are denied as moot:

> Plaintiff's motion for leave to permit filing of deposition transcripts in opposition to defendant's motion to dismiss or for summary judgment. (Dk. 239).

> Plaintiff's motion to strike [defendants' memorandum and reply to plaintiff's response to defendants' motion to dismiss, or in the alternative, motion for partial summary judgment], or in the alternative, for leave to file a surreply. (Dk. 245).

> Motion to strike defendant's latest motion for summary judgment and to stay plaintiff's obligation to respond to defendant's motion for summary judgment pending court's ruling on motion to strike. (Dk. 256).

> Motion to strike defendant's reply memorandum on the second motion for summary judgment (Dk. 262).

Believing it to be the best allocation of its resources, the court will simply set this matter for trial at one of the next available openings in this court's busy criminal and civil docket. So that it is clear, the court does not deem it appropriate to afford the defendants another opportunity to file dispositive motions in this case.

The court, as always, encourages the parties to explore the possibility of settlement of the disputed issues on mutually agreeable terms. Despite the acrimony that has unfortunately existed in this case, the court believes that resolution of this case by settlement is not beyond the realm of possibility and is an option these parties should give serious consideration.

### Non–Dispositive Motions

**Plaintiff's Motion to plead greater damages, for jury to determine punitive damages or for an advisory jury on punitive damages, and for order to lift cap on punitive damages. (Dk. 156).**

In the proposed pretrial order, the plaintiff has pleaded actual damages in the amount of $2,000,000 and punitive damages in the amount of $5,000,000. In this motion, the plaintiff asks leave of the court to amend his pleadings to seek actual damages in the amount of $3,000,000 and punitive damages in the amount of $15,000,000. The plaintiff's counsel contends that it was not until discovery that he fully appreciated the nature and extent of damages inflicted by the defendants. The plaintiff contends that the cap on punitive damages established by the Kansas legislature in K.S.A. 60–3702 [5] violates both United States and Kansas Constitution, and in any event should be lifted in this case "due

to the allegations of gross wanton, intentional and malicious behavior" of the defendants. The plaintiff also contends that he should be permitted to exceed the $5,000,000 cap under the exception set forth in K.S.A. 60–3701(f).[6] The plaintiff argues that applying K.S.A. 60–3702's requirement that the court and not the jury determine *the amount* of punitive damages would violate his Seventh Amendment right to a trial by jury.[7] Noting that he also has a claim for compensatory and punitive damages under the ADA, the plaintiff alternatively suggests that the jury be permitted to render an advisory verdict.

The defendant responds, arguing that the plaintiff has offered no legitimate reason or basis to seek an increase in the amount of compensatory damages claimed beyond the amounts set forth in the proposed pretrial order. The defendant also contends that the plaintiff offers no authority or basis upon which this court may increase or dispense with the $5,000,000 cap on punitive damages established by K.S.A 60–3701(e)(2). Apparently in regard to the allocation of the duty of determining the amount of punitive damages, the defendants state: "Although it has been held that the Constitution is not binding on the states, *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 99 n. 1 (4th Cir.1991), the Tenth Circuit Court of Appeals has reached no similar conclusion. *Cf. Weathers v. American Family Mutual Insurance Co.*, 793 F.Supp. 1002 (D.Kan.1992), wherein it was held that punitive damages are a question for the court and not the jury."

### Pleading Greater Damages/Lifting the Statutory Cap

Acknowledging that he cannot yet present all of the evidence necessary to demonstrate

---

**5.** K.S.A. 60–3702(a) provides:

> In any civil action in which exemplary or punitive damages are recoverable, the trier of fact shall determine, concurrent with all other issues presented, whether such damages shall be allowed. If such damages are allowed, a separate proceeding shall be conducted by the court to determine the amount of such damages to be awarded.

**6.** K.S.A. 60–3702(f) provides:

> In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected

to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1 ½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct.

**7.** The plaintiff concedes that in *Smith v. Printup*, 254 Kan. 315, Syl. ¶ 9, 866 P.2d 985 (1993), the Kansas Supreme Court concluded that the "legislative change from jury to judge in the determination of the amount of punitive damages does not affect the plaintiff's right to trial by jury under the Kansas Constitution."

that the increased damages he seeks to plead in the proposed amendments are warranted—either because the defendant has not provided discovery or because be will not be able to present his evidence until the time of trial—the plaintiff nevertheless seeks leave to plead substantial increases in his claims for both compensatory and punitive damages. In support of his motion to amend, the plaintiff submits unmarked excerpts of some of the depositions taken in this case which he contends support his request to amend his prayer for damages. The plaintiff goes on to explain that he has filed this motion at this time as he did not want to miss the deadline for filing nondispositive motions.

## Motions to Amend

■ Leave to amend pleadings "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court noted that:

Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. *See generally*, 3 *Moore, Federal Practice* (2d ed.1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Whether an amendment to a pleading is allowed is a matter committed to the district court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).

## Analysis

■ The court denies without prejudice the plaintiff's request to plead additional compensatory and punitive damages. Much of the plaintiff's motion is premised on material which the court does not have, nor is the information that the court has in its possession (either in the form of attached exhibits or otherwise appearing in the court file) indexed or referenced in any meaningful way. Given the incomplete nature of the plaintiff's motion to amend, the court deems it inappropriate to grant the plaintiff's motion to amend his pleadings to increase the amounts of compensatory and punitive damages he claims. Because it is unnecessary to reach the plaintiff's constitutional challenge to Kansas' statutory cap for damages, the court expresses no opinion on the issue. Similarly, because it is unnecessary at this juncture for the court to address the plaintiff's request to lift the statutory cap under the provisions of K.S.A. 60–3701(f), that request is denied without prejudice.

The plaintiff may file a renewed request to amend his pleadings to increase claims for greater compensatory and punitive damages on or before May 1, 1999.

## Allocation of Determination of Amount of Punitive Damages to the Court

■ Whether the procedure for determining punitive damages set forth in K.S.A. 60–3702(a) applies in Kansas diversity cases is unsettled. In *Busby, Inc. v. Smoky Valley Bean, Inc.*, No. 90–4071–SAC, 1993 WL 105142 (D.Kan. March 16, 1993), a diversity case over the wrongful conversion of beans, this court expressed the following opinion in regard to K.S.A. 60–3702(a):

The defendant argued that K.S.A. 60–3702(a) required the court to decide the amount of punitive damages. The court, over the objection of the defendant, submitted the issue of the amount of punitive damages to the jury. The court held that the plaintiff has a Seventh Amendment right to a jury determination of not only whether punitive damages are appropriate, but also a jury determination of the amount of punitive damages.

The Seventh Amendment provides:

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any

Court of the United States, than according to the rules of the common law. The Seventh Amendment is not binding upon the states. *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 99 n. 1 (4th Cir. 1991).

In short, if the Seventh Amendment prevents this court from substituting its own verdict for that of the jury's when ruling upon post-trial motions, *see Browning–Ferris v. Kelco Disposal,* 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (in reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered), the same Amendment prevents this court from supplanting the jury's function by sitting as the trier of fact in the first instance. *See Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1416 (4th Cir.1992) ("Although a state court in assessing punitive damages may apportion fact-finding responsibilities between judge and jury, we have held that in a federal court the jury performs those functions."); *MidAmerica Federal S. & L. v. Shearson/American Express,* 962 F.2d 1470, 1475 n. 7 (10th Cir.1992) (federal law generally governs the allocation of tasks between the court and the jury); *but see Weathers v. American Family Mut. Ins. Co.,* 793 F.Supp. 1002 (D.Kan.1992) (amount of punitive damages a question for the court).

*Id.* at *5 n. 1.[8] However, other judges from the District of Kansas have taken a contrary view. *See, e.g., Weathers v. American Family Mutual Insurance Co.,* 793 F.Supp. 1002 (D.Kan.1992) (Judge O'Connor); *H. Wayne Palmer & Assoc. v. Heldor Industries,* 839 F.Supp. 770, 777 (D.Kan.1993) (Judge Lungstrum) ("The court notes that it deems the Kansas punitive damages scheme to be substantive in nature and, thus, it follows

that K.S.A. § 60–3702 applies in diversity cases in Kansas.").

Contrary to the defendants' suggestion, *Weathers* was not a Tenth Circuit decision, nor does it appear that the Tenth Circuit has definitively ruled on the issue. *See Roberts v. Air Capitol Plating, Inc.,* No. 95–1348–JTM, 1997 WL 446266, *9 n. 5 (D.Kan. July 22, 1997) ("The Tenth Circuit does not appear to have addressed the issue" of whether federal district court must follow K.S.A. 60–3702(a) in Kansas diversity cases). This court notes that the Eighth Circuit has held that "the right to a jury trial in federal court is clearly a question of federal law" and that federal law regarding the right to a jury trial controls the issue even in cases "where the federal court is enforcing a state-created right and 'even when state statute or state constitution would preclude a jury trial in state court.'" *Kampa v. White Consolidated Industries, Inc.,* 115 F.3d 585, 587 (8th Cir. 1997) (*quoting Gipson v. KAS Snacktime Co.,* 83 F.3d 225, 230 (8th Cir.1996)) (citations omitted).

Until convinced or directed otherwise, this court believes that *Busby* was correctly decided. The plaintiff's invocation of his Seventh Amendment right to have the jury determine the amount of punitive damages, if any, to be awarded is granted.

**Plaintiff's motion in limine. (Dk. 164).**

The plaintiff has filed a motion in limine seeking to exclude certain categories or pieces of evidence, arguing that the evidence is inadmissible as it is hearsay, improper character evidence, evidence of attempted settlement, or is otherwise irrelevant or unfairly prejudicial. This court will set a date for filing motions in limine during the status conference held shortly in advance of trial. The plaintiff's motion is denied without prejudice and may be filed anew during the time to be set by the court.

---

**8.** Since the time this court decided *Busby,* no party appearing before this court has affirmatively asserted the Seventh Amendment right to have the jury determine *the amount* of punitive damages to be awarded. *See Ramirez v. IBP,* No. 94–4101–SAC, 1997 WL 161950 (D.Kan. March 27,

1997) ("On the implied agreement of the parties, the calculation of punitive damages was reserved for the court in an separate proceeding as provided at K.S.A. 60–3702."), *aff'd,* 145 F.3d 1346 (10th Cir.1998) (Table; available on Westlaw at 1998 WL 257161).

**Defendant's objection to order of Magistrate (Dk. 185).**

Due to the complexity of this motion and the time it will take for the court to thoroughly review the record, this motion remains under advisement.

**Motion for review of Magistrate's memorandum and order (Doc. 356) (Dk. 357):**

On August 29, 1997, Magistrate Judge Newman entered an order in which he opined that counsel for the defendants, William Haynes, had engaged in conduct during the taking of depositions which he characterized as both "unprofessional and unacceptable." *See* (Dk. 308). The magistrate judge deferred ruling on the "type and amount of sanctions it will impose until the court has considered all pending discovery matters." In a separate order that same day, Magistrate Judge Newman concluded that the defendants' "Motion for a Protective Order" (Dk. 171) was frivolous and without legal merit—essentially filed for no proper purpose. *See* (Dk. 307). As he did in the other order entered on August 29, 1997, the magistrate judge deferred his "determination of the type and amount of the sanctions it will impose against Mr. Haynes until the court has considered all pending discovery matters."

The defendants filed motions for reconsideration of both August 29, 1997, orders. On August 31, 1998, the magistrate judge entered an order denying the defendants' motions for reconsideration of both August 29, 1997, orders. As of yet, the magistrate judge has not entered an order determining the amount of sanctions, if any, to be imposed.

Fearful that they would miss their opportunity to challenge the magistrate judge's orders of August 29, 1997, the defendants filed a motion seeking review of the August 31, 1998, order denying their motions for reconsideration. However, recognizing that the issue of sanctions has not been finally resolved by the magistrate judge, the defendants ask the court to defer its ruling on this motion for review until all pending sanctions have been ruled upon by the magistrate judge. The plaintiff agrees with the defendants' suggestion to defer ruling as "[i]t

would seem that it is not the best use of the court's time to review only part of the ultimate order of Judge Newman, since no sanctions have yet been imposed."

The court agrees with the parties that a piecemeal review of these issues is not a wise investment of the court's time. The court will defer ruling on these motions until the magistrate judge determines what sanctions, if any, are appropriate in this case.

**Motion for review of Magistrate's memorandum and order (Doc. 359) (Dk. 360):**

Due to the complexity of this motion and the time it will take for the court to thoroughly review the record, this motion remains under advisement.

IT IS THEREFORE ORDERED that the defendants' Motion to Dismiss or in the alternative for partial summary judgment (Dk. 122), Motion to Dismiss or in the alternative for partial summary judgment (Dk. 198) and Motion by Defendants for summary judgment (Dk. 240) are denied.

IT IS FURTHER ORDERED that the following motions are also denied:

Motion for order to substitute defendant KMart's amended memorandum in reply to plaintiffs response to defendant's motion to dismiss, or, in the alternative, motion for partial summary judgment (Dk. 226).

Motion for leave to file memoranda supporting summary judgment and reply memoranda in excess of page limitations. (Dk. 266).

Motion for leave to file an amended memorandum in support of motion for summary judgment. (Dk. 280).

IT IS FURTHER ORDERED that the following motions are denied as moot:

Plaintiff's motion for leave to permit filing of deposition transcripts in opposition to defendant's motion to dismiss or for summary judgment. (Dk. 239).

Plaintiff's motion to strike [defendants' memorandum and reply to plaintiff's response to defendants' motion to dismiss, or in the alternative, motion for partial summary judgment], or in the alternative, for leave to file a surreply. (Dk. 245).

Motion to strike defendant's latest motion for summary judgment and to stay plaintiff's obligation to respond to defendant's motion for summary judgment pending court's ruling on motion to strike. (Dk. 256).

Motion to strike defendant's reply memorandum on the second motion for summary judgment (Dk. 262).

IT IS FURTHER ORDERED that Plaintiff's Motion to plead greater damages, for jury to determine punitive damages or for an advisory jury on punitive damages, and for order to lift cap on punitive damages (Dk. 156) is denied in part without prejudice and granted in part as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Plaintiff's motion in limine (Dk. 164) is denied without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion for review of Magistrate's decision regarding plaintiff's motion to take video tape deposition of Sandra Helton (Dk. 124) is denied as moot in light of the plaintiff's withdrawal of this motion.

IT IS FURTHER ORDERED that the plaintiff's motion to file a reply to the defendant's response to plaintiff's motion to add prayer for higher damages (Dk. 227) is granted.

IT IS FURTHER ORDERED that the defendant's motion to strike plaintiff's reply to defendant's response to motion to add prayer for higher damages, for jury to determine punitive damages, for advisory verdict and to lift the cap (Dk. 221) is denied.

IT IS FURTHER ORDERED that the following motions remain under advisement:

Defendant's objection to order of Magistrate (Dk. 185); Motion for review of Magistrate's memorandum and order (Doc. 356) (Dk. 357); Motion for review of Magistrate's memorandum and order (Doc. 359) (Dk. 360).